KINGMAN AND COMPANY v. CORNELL-TEBBETTS MACHINE AND BUGGY COMPANY, Appellant.

### In Banc, May 30, 1899.

1. **Attachment**: CHATTEL DEED OF TRUST: ACCEPTANCE. A chattel mortgage, given to secure the separate, independent debts of several creditors therein named, is good as to those who accept its provisions before other unsecured creditors intervene by attachment, but the rights of those who do not so accept are subordinated to the right of the attaching creditors.

2. ———: ———: ———: TO TRUSTEE: BENEFICIAL TO BENEFICIARY: PRESUMED. *Held*, by Court in Banc, that a delivery of a properly executed deed of trust to the trustee for the preferred creditors and his acceptance thereof, constitutes a good delivery, which enures to the benefit of all the beneficiaries therein named and their acceptance will be *prima facie* presumed unless within a reasonable time after notice of the grant they disaffirm or refuse to accept the grant.

3. ———: ———: ACCEPTANCE: GOOD FAITH. The good faith of the mortgagor can not be made dependent upon the acceptance or rejection of the security by the mortgagee.

4. **Negotiable Note**: NAME ON BACK: CHARACTER. One who writes his name on the back of a negotiable note of which he is not the payee, is *prima facie* a joint maker. But as between him and the payee, parol evidence is admissible to prove the character and intent of the undertaking and obligation, whether as joint maker, indorser, surety or guarantor, but not when the note is in the hands of an innocent purchaser before maturity, for value, without notice.

5. ――――: ――――: ――――: BY WHOM RAISED: STOCKHOLDER. But the character of the liability of a party to a note is a matter to be settled by the parties thereto, and no third person who has no interest in the note can classify or determine that liability. And where a defendant company in attachment executed its notes to a carriage company, and one of defendant's stockholders wrote his name on the back thereof, and the payee negotiated the notes before maturity, for value and without notice, to certain banks which were named as preferred creditors in the deed of trust, an attaching creditor has nothing to do with the notes, and whether such stockholder signed them as a joint maker, or indorser, or surety or guarantor, is immaterial as establishing the question of whether or not the deed of trust was executed for the purpose of hindering and defrauding the plaintiff and other non-preferred creditors who were not parties to the notes.

6. ――――: ――――: ――――: SUBROGATION. And where such stockholder after the attachment pays off the notes assigned to such banks he is subrogated to whatever right of preference they had therein.

*Appeal from Jasper Circuit Court.*—HON. EDWARD C. CROW, Judge.

REVERSED AND REMANDED.

SENECA N. TAYLOR, CHARLES ERD and E. O. BROWN for appellant.

(1) The mere fact that one of the creditors secured by a chattel deed of trust, fails to accept under the same, affords an unsecured creditor no ground for attachment where all the debts secured are *bona fide*. In such case the act of the grantor amounts simply to an offer to secure the creditors so failing to accept. His act is a lawful act, and mere failure of one of the several creditors secured to accept can not make the act a fraudulent one. (2) Where a chattel deed of

trust secures debts in favor of holders, and for which a surety is liable, though not named in the instrument, the surety can accept the same for himself and principals, and upon such acceptance the conveyance becomes operative as against attaching creditors levying subsequent to such acceptance. In the case at bar L. B. Tebbetts, surety as to all the secured debts, did accept before the attachment suit was begun. Sonnentheil v. Trust Co., 30 S. W. 945; McLaughlin v. Carter, 37 S. W. 666. (3) All securities given to a surety, whether in terms to pay the debt for which he is surety, or to indemnify and save him harmless from any harm or loss by reason of his suretyship, inure to the benefit of the creditor who is entitled to have the same applied in satisfaction of the debt. Thornton v. Bank, 71 Mo. 221; Hampton v. Fitz, 108 U. S. 260; Eastman v. Foster, 8 Met. 19; Aldridge v. Blake, 134 Mass. 582; Plant v. Story, 30 N. E. 886; Curtis v. Tyler, 9 Paig. 432; Brandt on Suretyship (2 Ed.), sec. 324; Bank v. Rich, 106 Mich. 319; Bank v. Wright, 45 Neb. 23. (4) As soon as a surety has paid the debt an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him and to avail himself of them as fully as the creditor could have done, for the purpose of obtaining indemnity from the principal. He is considered at once subrogated to all the rights, remedies and securities of the creditor and as substituted in the place of the creditor. Furnold v. Bank, 44 Mo. 336; Clark v. Bank, 57 Mo. App. 383; Allison v. Sutherlin, 50 Mo. 274; Ferguson's Adm'r v. Carson's Adm'r, 86 Mo. 673; Bank v. Lesper, 116 Mo. 76; 24 Am. and Eng. Ency. of Law, 188, 202, 209 and 405. (5) If the object of such chattel deed of trust is to indemnify a surety, who chanced to be a stockholder and director, this would not invalidate the deed. St. Louis v. Alexander, 23 Mo. 483; Foster v. Planing Mill Co., 92 Mo. 79; Schufeld v. Smith, 131

Mo. 280; Buel v. Buckingham, 16 Ia. 284; Hallam v. Hotel Co., 56 Ia. 179; Ringo v. Bisco, 13 Ark. 563; Duncomb v. Railroad, 84 N. Y. 190; Gould v. Little Rock, 52 Fed. 680; Bank v. Whittle, 78 Va. 759; Catlin v. Bank, 6 Conn. 233; Montreal v. Salt Co., 90 Mich. 374; Hospies v. Car Co., 48 Minn. 174; Wilkinson v. Bauerle, 41 N. J. Eq. 635.   (6) A chattel deed of trust securing several creditors for their respective individual claims is regarded in law as independent mortgages executed simultaneously to each secured creditor; and where one such creditor accepts under it, it makes the instrument operative as to him from the date of acceptance, though others should never accept.   Kuh v. Garvin, 125 Mo. 547; Woodson v. Carson, 135 Mo. 521; Teft v. Stern, 73 Fed. 591; Sonnenthiel v. Trust Co., 30 S. W. 945; Lutz v. Atchison, 38 S. W. 640; McLaughlin v. Carter, 37 S. W. 666; Sanger v. Henderson, 21 S. W. 114; Schunk v. Bakman, 14 S. W. 22; Burnett v. Marshall, 22 Pick. 556; Jones on Chat. Mortgs. (3 Ed.), secs. 336 and 351; Cobbey on Chat. Mortgs., secs. 150, 416 and 418.

McReynolds & Halliburton for respondent.

(1)   The chattel deed of trust having been made by defendant without the knowledge or consent of the beneficiaries therein, and certainly not accepted by two of the beneficiaries at any time, and probably not accepted by the third beneficiary before the levy of the attachment, the effect of this deed of trust was to place on record a false showing of the title of defendant's property, and the effect was to hinder and delay defendant's other creditors.   The conveyance is therefore fraudulent and void as to other creditors, and will sustain attachment.   Reed v. Pelleiter, 28 Mo. 177; Donnell v. Byern, 69 Mo. 468; Bulene v. Barrett, 87 Mo. 135; Kennedy v. Dodson, 44 Mo. App. 550; White v. Graves, 68 Mo. 218; Bank v. Powers, 134 Mo. 432; Pattison v. Letton, 36 Mo. App. 325;  Wait on Fraud. Convey. (2 Ed.), secs. 8, 9

and 10.    (2)    This chattel deed of trust comes under the same rule that would apply in the case of an unrecorded chattel mortgage of personal property and has the same effect as to creditors, to wit, as to creditors it is fraudulent and void. Bevin v. Bodeman, 31 Mo. 437; Conrad v. Fisher, 37 Mo. App. 352; Jewett v. Priest, 43 Mo. App. 509; Johnson v. Jeffries, 30 Mo. 423; Hughes v. Menefee, 29 Mo. App. 203; Kollock v. Emmert & Co., 34 Mo. App. 566.    (3)    This chattel deed of trust being made to a trustee for three separate and independent beneficiaries is the same as though there were three separate and independent chattel deeds of trust, and in passing on this case as between plaintiff and defendant, the law is applied, so far as each beneficiary is concerned, as though the mortgage was for his benefit alone. Woodson v. Carson, 135 Mo. 521.    (4)    A conveyance to be fraudulent need not originate in any meditated design to commit a positive fraud or to injure others.    Many acts are, from their tendency to deceive others, or from their injurious consequences to the public, prohibited by the law as being within the same reason and mischief as actual fraud.    Reed v. Pelleiter, 28 Mo. 173; Farmers and Traders Bank v. Harrison, 57 Mo. 508; Wait on Fraud. Convey., sec. 9; Bishop on Contracts, secs. 456, 457 and 458; Pattison v. Letton, 56 Mo. App. 325; Molaska Mfg. Co. v. Steele, 36 Mo. App. 496; State to use v. Koch, 40 Mo. App. 635; Bigelow v. Stringer, 40 Mo. 206; Snyder v. Free, 114 Mo. 376; Cole Mfg. Co. v. Jenkins, 47 Mo. App. 668.    (5)    A conveyance may be fraudulent so as to support attachment though the assignee or grantee obtain a good title.    Enders v. Richards, 33 Mo. App. 598; Sauer v. Behr, 49 Mo. App. 86; National Tube Works Co. v. Machine Co., 118 Mo. 375.    (6)    In determining whether an instrument is of such character as to support an attachment, the intent or motive which prompted the conveyance or assignment is immaterial; it is the legal effect of the deed which makes it valid or fraudulent.    Potter v.

McDowell, 31 Mo. 62; Douglass v. Cissna, 17 Mo. App. 44; Noyes v. Cunningham, 51 Mo. App. 194; Gens v. Hargadine, 56 Mo. App. 245; Field v. Liverman, 17 Mo. 218; Kritzer v. Smith, 21 Mo. 296; Glacier v. Walker, 69 Mo. App. 288. (7) The only trouble being that before a principal or surety can be subrogated to securities given to the other they must be valid and binding securities that the other could enforce. And in this State the party would have to go into equity to enforce the right.

McReynolds & Halliburton for respondent in support of motion for rehearing.

This chattel mortgage may be declared fraudulent and void as between plaintiff and defendant and yet declared valid and binding as to one or more of the beneficiaries. If a mortgage is valid as to any one of the beneficiaries therein it can be declared invalid by reason of fraud as to other beneficiaries. That very thing has been done time and again in this State. Woodson v. Carson, 135 Mo. 521; Wait on Fraud. Convey. (2 Ed.), secs. 8, 9 and 10.

Seneca N. Taylor, Charles Erd and E. O. Brown for appellant on motion for rehearing.

(1) Mere failure to record a deed of trust, where possession is not to remain in the maker, but is at once assumed by the trustee, has never been held substantive ground for attachment in this State. It is only where the conveyance is made to the grantor's use that the giving of such a mortgage constitutes a fraudulent conveyance. Sauerwein v. Champaign Co., 68 Mo. App. 32. (2) No case has been cited by counsel for respondent holding that the mere failure of one of several distinct creditors, secured by a single deed of trust, to accept its terms, before an attachment is levied, affords substantive grounds for such attachment. (3) A

chattel deed of trust is valid when executed as indemnity to a person who has become surety on the negotiable paper of the maker of the deed of trust. In other words, a chattel deed of trust can be lawfully made as indemnity for a contingent liability. Fountaine v. Lumber Co., 109 Mo. 55; Guarantee Co. v. Baker, 54 Mo. App. 79; Jewett v. Warren, 12 Mass. 300; Adams v. Nieman, 46 Mich. 135; Lyons v. Sherman, 25 Neb. 845; Hackley v. State, 91 Ind. 437; Conley v. State, 85 Ga. 348. (4) The indorser is entitled to the benefit of all the securities for the debt taken by the creditor of the debtor, and is discharged from his liability to the extent that the creditor parts with any securities, and this though the securities which were given were without his knowledge. Taylor v. Jeter, 23 Mo. 250; Wilcox v. Todd, 64 Mo. 388; Brandt on Suretyship and Guaranty, secs. 291 and 378; Hidden v. Bishop, 5 R. I. 29; Dulany v. Willis, 5 Leigh. (Va.) 329; Walendy v. Austin, 69 Ill. 15. (5) A chattel deed of trust executed in favor of a trustee to secure certain designated notes properly described, becomes collateral to such notes, and any transfer of such notes carries also such collateral. Therefore, a chattel deed of trust made to a trustee for the purpose of securing the payment of designated notes without naming the party who holds them, is a good conveyance, and it follows that any party interested in the payment of such notes, as holder or surety, may assent to such deed so as to give it binding force as collateral to such notes. Barnett v. Houston, 44 S. W. 692; Dulany v. Willis, 29 S. E. 324; Adams v. Nieman, 46 Mich. 147. (6) It is settled law in this State that property in possession of a mortgagee or trustee under a valid mortgage or deed of trust, is not subject to levy under execution or attachment by creditors of the mortgagor. King v. Bailey, 8 Mo. 332; Young v. Schofield, 132 Mo. 651; Fahy v. Gordon, 133 Mo. 414; Woodson v. Carson, 135 Mo. 527.

MARSHALL, J.—Division No. One of this court, speaking through MARSHALL, J., all of the judges concurring, delivered the following opinion in this case:

"On November 17th, 1893, plaintiff instituted suit, in the circuit court of Jasper county, against defendant, upon five promissory notes. The answer was a plea of payment.

"On the 14th of February, 1894, the defendant executed and delivered to H. H. Harding, as trustee, a deed of trust, covering its stock of merchandise in its store at Carthage, Missouri, to secure its indebtedness, evidenced by promissory notes in favor of William Deering & Co., aggregating $2,979.50, all dated February 12th, 1894, of Merchants' National Bank, of Cincinnati, aggregating $1,452.56, all dated June 6th, 1893, and of Fourth National Bank of Cincinnati, aggregating $726.63, all dated June 6th, 1893. None of said notes were due when the deed of trust was made or when the attachment was sued out. The trustee, on the same day, caused the deed of trust to be recorded in Jasper county, and immediately took possession of the property covered by the deed of trust, and placed A. E. Tebbetts in charge of the goods with directions to sell them and render to him an account of sales on the first of each month.

"The deed of trust provided that the mortgaged property should remain in the possession of the mortgagor until default in the payment of some of the notes, but that the mortgagor should have no right to sell any part of the mortgaged property without the written consent of the beneficiaries in the mortgage, and if done with their consent the proceeds of sale should be immediately applied to the payment of the secured debts; that in case of a sale or any attempt to sell or remove the property, without such written consent, or of any unreasonable depreciation in the value of such property, the trustee should take possession of the property, and sell it at public or private sale, at his option, in Carthage.

"The trustee, upon taking possession, at once proceeded to sell at private sale, and continued to do so for about a month, receiving all the proceeds of sale.

"On the 10th of March, 1894, the plaintiff sued out an attachment in aid of its suit, previously begun on the 17th of November, 1893, and thereafter on the 25th of October, 1894, filed an amended affidavit for attachment, alleging five grounds of attachment to wit: '1.' That defendant on March 6th, 1894, had fraudulently conveyed and assigned its property and effects so as to hinder and delay its creditors. 2. That the defendant had fraudulently concealed, removed and disposed of its property and effects so as to hinder and delay its creditors. 3. That defendant was about fraudulently to convey and assign its property and effects so as to hinder and delay its creditors. 4. That defendant was about fraudulently to conceal, remove and dispose of its property and effects so as to hinder and delay its creditors. 5. That the debt sued for was fraudulently contracted on the part of the debtor.'

"The not uncommon condition is present in this case, of a direct and irreconcilable conflict between counsel as to whether the record shows that the beneficiaries in the deed of trust accepted it before the attachment writ was levied. Appellant's counsel says, 'William Deering & Co., one of the beneficiaries whose debt was secured by said deed of trust accepted under the same within two or three days after its execution and about a month before the levy of the attachment in this action. The other two beneficiaries had not formally accepted under the deed at the time the property was seized by the sheriff. Lewis B. Tebbetts, however, who was surety on all the notes held by said Merchants' National Bank and said Fourth National Bank, secured to be paid by said chattel deed of trust, and to whose benefit as such surety the conveyance inured, did accept under the same immediately after the execution of said deed; and subsequently, and after

the levy of the attachment, he took up and paid said notes and became subrogated to the rights of said banks under said conveyance.'

"Respondent's counsel on the other hand says: 'The record shows that neither of the beneficiaries knew of the execution of said chattel deed of trust until after the making and recording of same. And that neither of the beneficiaries accepted or attempted to accept the benefits of said chattel deed of trust until after the levy of the attachment in this cause.'

"The printed record in this case covers 180 pages, and this contrariety of contention of counsel has imposed upon the court the necessity of reading it to settle this question of fact. The testimony of Craig, Harding and L. B. Tebbetts shows that Deering & Co. were trying to procure the security before it was given, and that after it was given they accepted it within a few days, and before the attachment was levied. L. B. Tebbetts was an indorser on the notes held by the two banks, and guarantor for the debt to Deering & Co., and immediately after the deed of trust was executed he notified the banks and Deering & Co. of the fact, and he approved of and accepted the deed of trust. It does not appear that the banks accepted the security. None of this testimony was controverted at all by the plaintiff. It must therefore be taken as true in this case.

"The trustee took possession of the mortgaged property with the consent of the debtor company, and of Tebbetts, and his action in this regard was approved by Deering & Co.

"At the request of the plaintiff the court instructed the jury as follows:

"1. The court instructs the jury that if they believe from the evidence that the defendant, by its officers, in executing and having executed the chattel deed of trust read in evidence intended thereby to hinder, delay or defraud any one

or more of its creditors they will find the issue for the plaintiff on the first ground alleged in the affidavit for attachment.

"2. The court instructs the jury that while fraud is not to be presumed, yet it is rarely susceptible of being proved by direct and positive testimony and may be proved by facts and circumstances and if the jury believe from all the facts and circumstances detailed in evidence that the officers of defendant intended by the execution of the chattel deed of trust read in evidence to hinder, delay or defraud any one of its creditors, they will find the issue for plaintiff. on the first ground of attachment alleged in the affidavit.

"3. The court instructs the jury that if they believe from the evidence that the officers of the defendant company executed the chattel deed of trust read in evidence without the knowledge of the Merchants' National Bank, of Cincinnati, Ohio; the Fourth National Bank of Cincinnati, Ohio, and Wm. Deering & Co., the beneficiaries therein, or either of them, and either of said parties did not accept said chattel deed of trust before the levy of the attachment in this cause, then said chattel deed of trust was fraudulent as to other creditors of defendant company, and the jury will find the issue for plaintiff on the first cause for attachment.

"4. The court instructs the jury that if they believe from the evidence that defendant company had a stock of over $6,000 about January 1st, 1894, and that when the attachment was levied March 10, 1894, their stock did not amount to more than about $2,500 and said defendant company, its officers and agents have failed to account for the difference in the value of the stock, then the jury may take such facts together with all the other facts and circumstances in evidence on the question as to whether defendant had concealed, removed or disposed of its property and effects with intent to hinder, delay or defraud its creditors or any of them, and if the jury believe from all the facts and circumstances in evidence that defendant by its officers had at the time of the

levy of the attachment concealed, removed or disposed of any of its property or effects with intent to hinder, delay or defraud any of its creditors they will find the issues for the plaintiff on the cause of attachment.

"5. The court instructs the jury that L. B. Tebbetts, H. M. Cornell and A. M. Tebbetts not being payees of the Cook Carriage Company notes and having written their names across the back of said notes at the time of making the same the law holds said Tebbetts, Cornell and Tebbetts as makers of said notes and not securities or indorsers thereof and it was the duty of said L. B. Tebbetts to pay said notes at maturity and he is not entitled to any benefit of the chattel deed of trust read in evidence and his acceptance does not validate the chattel deed of trust if invalid under the evidence and other instructions in this case.

"6. The court instructs the jury that if they believe from the evidence that the notes made by defendant company to Wm. Deering & Co. and secured by the chattel deed of trust, were sent by defendant officers or L. B. Tebbetts to Deering & Co., and Deering & Co. returned said notes to said Cornell-Tebbetts Machinery and Buggy Company, then the receipt alone of said notes at that time was not an acceptance of said deed of trust, and if the jury believe from the evidence that said Deering & Co. did not finally accept said notes until March, 1894, and did not accept said notes until after the levy by the sheriff March 10, 1894, then such chattel deed of trust was invalid as to plaintiff, and fraudulent in so far as it attempted to secure the notes to Wm. Deering & Co. and the jury will find the issues for plaintiff on the first cause of attachment.

"7. The court instructs the jury that on February 19, 1892, H. M. Cornell, president of the defendant company, signed a written guarantee to plaintiff guaranteeing the payment of all indebtedness that might become due from defendant to plaintiff and making himself individually liable

for all such indebtedness, and that said Cornell on the same day made written representations to plaintiff showing himself (Cornell) to be worth $39,000 above all debts and exemptions. Now if the jury believe from the evidence that plaintiff sold goods to the defendant on the strength of and by reason of said guarantee of said Cornell and his (Cornell's) said representations as to his worth financially, and if the jury believe from the evidence that said Cornell's representations as to the property owned by him, and the value thereof was substantially false and said Cornell knew at the time said representations were false, or if said Cornell at the time did not know said representations to be true, then the indebtedness to plaintiff was fraudulently contracted, and the jury will find the issue for plaintiff on the fifth cause of attachment.

"8. The court instructs the jury that to make a valid chattel deed of trust it must be accepted by the beneficiaries therein and the filing of same for record by the mortgagors or the trustees named therein does not constitute an acceptance by the beneficiaries and the trustee named in such chattel deed of trust has no authority by reason of his being named as such trustee by the mortgagor to accept the same for the beneficiaries and must have special authority from such beneficiaries before he can accept the same for them. And any acts of the trustee Harding in accepting the trust under the chattel deed of trust read in evidence and attempting to take possession of the goods, or place parties in charge of said goods to sell same, or in collecting or attempting to collect the proceeds of the sale of such goods, would not make said chattel deed of trust valid until said chattel deed · of trust had been accepted by the beneficiaries therein named, to wit, The Merchants' National Bank, The Fourth National Bank, and Wm. Deering & Co., and if the jury believe from the evidence that said beneficiaries or any of them did not accept such chattel deed of trust until after the levy

of the attachment in this cause then said chattel deed of trust was fraudulent as to plaintiff and the jury will find the issue for plaintiff on the first charge in the affidavit for attachment.

"9.   The court instructs the jury that if they believe from the evidence that in executing the chattel deed of trust read in evidence, by the officers of the defendant company, that said chattel deed of trust was not made in good faith to secure the Merchants' National Bank of Cincinnati, Ohio, and the Fourth National Bank, of Cincinnati, Ohio, and Wm. Deering & Co., but was made for the purpose of protecting K. B. Tebbetts, H. M. Cornell and A. M. Tebbetts or either, as signers or indorsers of the Cook Carriage Company note, and as guarantors of the indebtedness to Wm. Deering & Co., then such chattel deed of trust was a secret trust fraudulent as to other creditors of defendant company, and the jury will find the issue for plaintiff on the first cause for attachment.

"At the request of defendant the court instructed the jury as follows:

"2.   The court instructs the jury that the burden of proving the truth of the grounds of attachment rests upon the plaintiff, and that plaintiff must sustain such burden by a preponderance of evidence in its behalf, by which is meant not that plaintiff must have introduced a greater number of witnesses in its behalf, but that the evidence must have been more clearly and convincingly in favor of the plaintiff than of the defendant.   It is to the quality, rather than to the quantity of the evidence, on both sides, that the jury must look.

"G2.   The court instructs the jury that the question to be determined by them under the plea of abatement is not whether the defendant is indebted to the plaintiff, or the extent of such indebtedness, but the question to be determined is whether the charge made in the affidavit filed by the plaintiff as grounds of attachment are true and founded on fact.

"H2. The court instructs the jury that while fraud may be established by circumstances, yet it is not to be guessed at merely or presumed to exist in the absence of evidence tending to show fraud; and the court directs the jury that if the evidence here indicated consists of matters of suspicion merely or matters of mistake, and is as consistent with proper motives as with those which are improper—then the jury will find for the defendant upon the grounds of attachment, as they all involve a finding by the jury that the action of the defendant was fraudulent and for unlawful purposes.

"12. All the instructions given you are the court's instructions and in arriving at a verdict in the case you will read and consider all of them together as modifying and explaining each other, and if you have any doubt about the meaning of any one or more of the instructions, it is your duty to read the other instructions in connection therewith, with a view of understanding all of the instructions submitted to you for guidance.

"The defendant and the court refused to give as asked the following instructions, but modified them by requiring the jury to find that the beneficiaries in the deed of trust accepted it before the levy of the attachment, and when so modified gave them to the jury.

"A. The court instructs the jury, that if they believe from the evidence that the notes secured by the chattel deed of trust, dated February 12, 1894, which have been read in evidence, were for *bona fide* indebtedness owing by the defendant to the parties named in said notes, then it was lawful for the defendant to execute said chattel deed of trust, and if such deed was valid the execution of the same affords no grounds for sustaining the attachment in this case.

"B. The court instructs the jury that an insolvent debtor has the right to prefer or secure one or more creditors to the exclusion of all other creditors, and that a convey-

ance by way of preference or security, made in good faith and simply to prefer or secure is valid, although the effect of it may be to postpone the demands of other creditors, or, in the language of the attachment act, 'to hinder or delay such creditors.' Before such conveyance can be found to be fraudulent within the meaning of the statute, so as to authorize an attachment, it must be proven to have been given not for the purpose of preference or security simply, but to preserve or secure a secret use for the debtor or create for such debtor a secret estate in the property in fraud of the rights of other creditors not preferred or secured.

"C. The court instructs the jury that if they believe from the evidence, that all the indebtedness mentioned in and secured by the chattel deed of trust read in evidence in this case, dated February 12th, 1894, was a *bona fide* liability of the defendant company to the persons and in the amount therein named and therein expressed, existing at the time said chattel deed was executed, and that said chattel deed was given in good faith simply to prefer or secure the indebtedness therein referred to, then said conveyance was not fraudulent within the meaning of the statute, although the jury may further find from the evidence that the effect of giving of said chattel deed of trust was to hinder or delay other creditors of the defendant company and give preferences to certain creditors over other creditors of the defendant company.

"D. The court instructs the jury that statements made by Mr. Cornell, touching his personal assets and liabilities, can not be treated or considered by the jury as a statement or representation of the Cornell-Tebbetts Machinery and Buggy Company, and even if the jury believe and find that said Cornell did make false representations as to the character and value of his individual property, real and personal, this would afford no ground for sustaining the attachment in this case.

"E.   The acceptance of the deed of trust by the beneficiary need not be in express words or terms but may be implied from the facts and circumstances shown in evidence.

"The defendant asked and the court refused the following instructions:

"K.   The court instructs the jury that the ground of attachment that the debt sued for was fraudulently contracted can only be sustained by evidence tending to show that the whole debt sued for was so contracted upon the part of the defendant.

"L.   The court instructs the jury that if they believe from the evidence that the chattel deed of trust, read in evidence, was given to secure *bona fide* promissory notes mentioned therein, then said conveyance was not fraudulent, although the effect of its having been given was to give a preference to certain creditors over that of other creditors of the defendant.

"M.   The court instructs the jury that the retaining of possession of the property covered by the deed of trust read in evidence and the sale of portions thereof by the defendant after the execution of the said deed of trust constitutes no grounds for sustaining the attachment in this case; that the deed of trust read in evidence provides that this may be done and such provision is consistent with law and does not constitute fraud.   That there is no evidence in this case that the defendant used any of the property covered by the deed of trust for its own use after execution of the same.

"N.   The court instructs the jury that there is no evidence in this case that the officers of the defendant company practiced any misrepresentations or deceit upon the plaintiff whereby it was induced to extend the credit or consent to the debt sued for.

"O.   The court further instructs the jury that if they believe from the evidence that William Deering & Company ratified the execution of the deed of trust as security for

their notes before the 10th day of March, 1894, then it became operative as to said William Deering & Company as a security, even though the jury believe and find from the evidence that the banks of Cincinnati never accepted or ratified said deed of trust as security of papers held by said banks respectively.

"P.  The court instructs the jury that the plaintiff had no right to look to L. B. Tebbetts for the payment of the debt sued for in this case, if you believe from the evidence that the plaintiff gave defendant credit for the debt sued for on account of L. B. Tebbetts owning one share of stock in and being a director of the defendant company, and that said L. B. Tebbetts refused to become personally liable for the debt in suit, this would constitute no legal ground whatever for attachment in this case.

"The jury found for the plaintiff 'on the first cause of attachment,' and made no finding as to the others.   The defendant's motion for new trial having been overruled, and after final judgment had been entered for plaintiff on the merits for $3,140.75, defendant filed its bill of exceptions and appealed to this court.

"I.

"It is apparent that this case was tried by the circuit court upon the theory that if any one of the creditors whose debts were secured by the deed of trust, did not accept the security created by that deed before the plaintiff's attachment was levied, it made the deed of trust fraudulent as to all the creditors whose debts were thereby secured, even if all such other creditors did accept.   The jury was expressly so instructed in the third and eighth instructions given at the request of plaintiff.   In this respect the circuit court committed error.   The rule in Missouri is that where a mortgage (or deed of trust) is given to secure the separate, independent debts of several creditors therein named, it is

good as to those who accept its provisions before the rights of other unsecured creditors of the debtor intervene by attachment, but the rights of those who do not so accept are subordinated to the rights of the attaching creditors. This is the case where there is a contest of priority between the secured creditors and the attaching creditors. [Kuh v. Garvin, 125 Mo. 1. c. 561; Jones on Chattel Mortgages (3 Ed.), sec. 104.] But the fact that some of the debts of the unsecured creditors are fraudulent or fictitious, does not make the deed fraudulent as to those whose debts are *bona fide*. [Woodson v. Carson, 135 Mo. 1. c. 528; Jones on Chattel Mortgages (3 Ed.), sec. 336; Cobbey on Chattel Mortgages, secs. 150, 416-418.]

"Such mortgages are treated as if separate mortgages had been made in favor of each creditor. This being true it follows that the third and eighth instructions given at the request of the plaintiff are erroneous, for they proceed upon the false idea that if any one of the creditors secured by the deed of trust did not accept the deed of trust before the plaintiff's attachment was levied, it made the whole deed of trust fraudulent, even as to those who did accept.

"In this connection it is proper to say that in this case there is no evidence whatever that the debts secured by the deed of trust were fraudulent. On the contrary it affirmatively and conclusively appears that they were all *bona fide*. This being conceded, the debtor had a right to prefer those creditors. If this was his purpose, no fraud can be predicated upon the act. It could not be tolerated that the good faith of the mortgagor could be made dependent upon the acceptance or rejection of the security by the mortgagee. Or in other words, that the mortgage would be valid if the mortgagee accepted it before the attachment was levied, but would be fraudulent if the mortgagee failed or refused to so accept it.

"In this case the court confounded the principles applicable to a contest of priority between the unaccepting mortgagees and the attaching creditor, with the principles applicable to fraudulent conveyances in a contest between the debtor and an attaching creditor. These considerations necessarily lead to a reversal of the judgment below, but as the case must be retried, it is proper to refer to other features of the case.

"II.

"There is no conflict in the evidence that Deering & Co. accepted the mortgage before the attachment was levied, neither is there any suspicion of a doubt that their debt is *bona fide*. There can be no doubt that they were not parties in any way to any fraud upon the other creditors of the defendant. They could not be excluded from the benefit of the security because they did not know the mortgage had been made and had not accepted it, and at the same time be adjudged guilty of participation in making a fraudulent mortgage. They are not parties to this action, and the priority between them and the plaintiff can not be settled in this proceeding. But the deed of trust can not be held to be fraudulent, for there is this valid, *bona fide* claim to support it.

"The sixth instruction given for plaintiff was erroneous, forasmuch as there was no evidence upon which to base it. The acceptance of Deering & Co. was before and not after the levy of the attachment.

"III.

"The fifth instruction given for plaintiff declared the law to be that L. B. Tebbetts, H. M. Cornell, and A. M. Tebbetts not being the payees in the notes given the Cook Carriage Co. (being the notes held by the two Cincinnati banks), and having written their names across the back of

said notes at the time they were made, they are makers of said notes, and not securities or indorsers thereof, and it was the duty of L. B. Tebbetts to pay them at maturity, and he is not entitled to any benefit of the chattel deed of trust, and he could not accept the deed of trust.

"The decisions in England and America differ widely as to character and liability of one who writes his name on the back of a negotiable note of which he is not the payee. In some jurisdictions he is held to be a first indorser; in others, a second indorser; in others, a surety or a guarantor; and in others, *prima facie*, a joint maker. [Daniel on Negotiable Instruments (4 Ed.), sec. 710 et seq.] As between such person and the payee, parol evidence is admissible to explain and control the character of his obligation, and in many jurisdictions this may be done even where the note is in the hands of a *bona fide* holder for value and without notice. [Daniel on Negotiable Instruments (4 Ed.), secs. 711, 712 et seq.]

"The rule in Missouri has long been settled, that he is, *prima facie* a joint maker. [Powell v. Thomas, 7 Mo. 440; Lewis v. Harvey, 18 Mo. 74; Schneider v. Schiffman, 20 Mo. 571; Baker v. Block, 30 Mo. 225; Chaffe v. Railroad, 64 Mo. 193; Semple v. Turner, 65 Mo. 696; Mastin Bank v. Hammerslough, 72 Mo. 274.] As between such person and the payee, parol evidence is admissible to prove the character and extent of the undertaking and obligation, whether as joint maker, indorser, surety or guarantor. [Beidman v. Gray, 35 Mo. 282; Seymour v. Farrell, 51 Mo. 95; Semple v. Turner, 65 Mo. 696.] But such parol evidence is not admissible when the note is in the hands of an innocent purchaser before maturity, for value, and without notice. [Chaffe v. Railroad, 64 Mo. l. c. 195.] And, *e converso*, where the person named in the note as payee, indorses the note, parol evidence is not admissible to show that he agreed to be

liable in some other character than as an indorser. [Rodney v. Wilson, 67 Mo. 123.]

"The character of the liability of a party to a note, is a matter to be settled between the parties thereto. No third person, who has no interest in the note, can classify or determine the liability of those who are parties to and interested in the note. In this case as between the Cook Carriage Co., the payee, and L. B. Tebbetts, who signed the note of the defendant company, parol evidence was admissible to determine the character of Tebbetts' liability. But the payee, having negotiated the notes to the Cincinnati banks before maturity, if the banks held them for value and without notice, Tebbetts could be treated by the banks as a joint maker or an indorser at their option. But this plaintiff had nothing to do with the notes. Whether Tebbetts was a joint maker or an indorser or a surety or a guarantor is not material in this case. The debt evidenced by the note was the debt of the defendant company and not of Tebbetts. As between the defendant company and Tebbetts, he was entitled to protection by the company against loss, and that protection could legally be given him at the time he became liable for the debt of the company or at any time after he became liable. It was the privilege as well as the right of the company to protect him. Having a right to prefer some of its creditors over others, it could adopt any legal means to effectuate that purpose. In this instance it secured the debts for which he was liable. If the secured creditors had seen fit to pursue their remedy under the mortgage and had collected their debts in this way, the unsecured creditors could not have successfully opposed it. On the other hand the secured creditors had a right to pursue the other course and compel Tebbetts to pay them. They selected this method. Tebbetts therefore became immediately subrogated in equity to the rights of the secured creditors under the mortgage, and was entitled to all the security which they held against

the mortgagor, and the fact that he was or was not a stock-holder in the defendant company is wholly immaterial.. [Foster v. Planing Mill Co., 92 Mo. 79; Schufeldt v. Smith, 131 Mo. 280; Furnold v. Bank, 44 Mo. 336; Allison v. Suth-erlin, 50 Mo. 274; Sevier v. Roddie, 51 Mo. 580; Burnside v. Fetzner, 63 Mo. 107; Ferguson v. Carson, 86 Mo. 673; Bank v. Leyser, 116 Mo. l. c. 76; Clark v. Bank, 57 Mo. App. l. c. 283.]

"On the other hand if the defendant had executed the mortgage directly to Tebbetts to protect him against loss by reason of his indorsements and guaranties, the holders of such notes and guaranteed debts would have been subrogated to his rights under the mortgage. [Thornton v. Bank, 71 Mo. l. c. 232.]

"Applying those principles to the case at bar, it follows, that as Deering & Co. had accepted the mortgage before the levy of the attachment, and as the mortgage was a simple preference, and in no respect fraudulent, they had a superior right in the property to that acquired by plaintiff under its attachment, and when Tebbetts paid their notes he was sub-rogated to all their rights under the mortgage. The banks did not accept the mortgage before the levy of the attach-ment; hence their rights were inferior to plaintiff's. Teb-betts is not shown to have had any authority to accept for them, and not having paid off their notes before the levy of the attachment, he had no fixed demand against the mortgagor, and hence could not accept the mortgage for him-self. [Hearne v. Keath, 63 Mo. l. c. 89.] His subsequent payment of the notes held by the bank, subrogated him to the rights of the bank, and as the bank's right under the mortgage was inferior to the plaintiff's rights under its attachment, Tebbetts' rights were likewise subordinate to the rights of the plaintiff.

"It follows that the fifth instruction given for plaintiff is erroneous in respect to declaring that Tebbetts was a joint

maker of the notes, and in not discriminating between the status of Deering & Co. and of the banks, and the sub-rogated rights of Tebbetts under their respective claims, and further in undertaking to measure the *bona fides* and validity of the mortgage, by the legal standards applicable to a contest of priorities. This last remark applies to and runs through the whole case.

## "IV.

"The rule requiring an acceptance of a mortgage by the beneficiary before the attachment of the unsecured creditor is levied, and determining their respective priorities by those considerations has given rise to many perplexing questions and consequences. A failing debtor has a right to make prefer-ence, which implies that the debt so secured is *bona fide*, and that the mortgage is made by him in good faith, and that there is no fraud on the part of the mortgagee. Such a transaction is undoubtedly legal and valid. But before all the mortgagees can possibly be informed of the recording of the mortgage in their favor or have had time to accept it, an unsecured creditor levies an attachment on the property, based upon allegations of fraudulent intent on the part of the mortgagor or upon any of the statutory grounds for attach-ment. The attaching creditor, under the decisions in Mis-souri above referred to and the same rule obtains in many if not most of the other States [Jones on Chattel Mortgages, sec. 104; Cobbey on Chattel Mortgages, sec. 413], acquires an inferior right to the secured creditors who have accepted, and a superior right to those who have not accepted the mortgage prior to the levy of the attachment. The secured creditors are not parties to the attachment suit and their rights can not be litigated or the priorities between them and the at-taching creditor settled in that proceeding. Under our statute, sec. 572, R. S. 1889, the secured creditors have a right to interplead, and the priorities could be settled in that way,

VOL. 150 mo—20

as was done in Kuh v. Garvin, 125 Mo. 547, or they might replevy the goods as was done in Woodson v. Carson, 135 Mo. 521, and, as there, the attaching creditors can come in and be made parties defendant, and the question of priorities could be settled. But if the secured creditors, as here, do not come in and interplead or replevy, the case must be tried simply between the attaching creditor and the debtor, and if as here, the evidence discloses that the mortgage is valid and in no sense fraudulent, but that the rights of some of the mortgagees are superior to those of the attaching creditor, by reason of their having accepted the mortgage before the attachment was levied, while the attaching creditor is entitled to a priority over the other mortgagees because they did not so accept the mortgage before the attachment was levied, what is the legal result? Logically the plaintiff should fail in his attachment entirely, for he has alleged fraud and simply proved there was no fraud but that he has acquired a priority over some of the mortgagees, though not over all. If, however, plaintiff's attachment is abated for failure to prove his case as laid, he will lose the priority he has obtained over the unaccepting mortgagees. On the other hand it is clear that his attachment can not be sustained and the attached property sold the proceeds turned over to him, for the accepting secured creditors have a superior right to the attaching creditor, and moreover the plaintiff would then be allowed to recover on an allegation that the mortgage was fraudulent, while the whole proof was that it was valid, and that others had a superior legal right to the priority over that of the attaching creditor.

"The court could not require the secured creditors to interplead under sec. 572, R. S. 1889, for that is a privilege conferred upon them. The attaching creditor could not avail himself of the rights conferred by sec. 571, R. S. 1889, and maintain an action against the mortgagor and mortgagees, or only against the latter, to have the mortgage set

aside as fraudulent, for, as pointed out, the proof would fail to sustain such an allegation in such a proceeding, for the same reason that it would fail to support the attachment.

"If the attaching creditor went into a court of equity and made the mortgagor and all the mortgagees parties defendant, and proved the facts to be as stated, the court of equity would have power to adjust the priorities of the parties, to enjoin the further prosecution of the attachment suit or any other proceeding. In this event the plaintiff will have gone into a court of law, with an attachment, charging that the mortgage is fraudulent, and will come out of a court of equity, where the mortgage will have been held valid, but the plaintiff accorded a priority over some or perhaps all of the mortgagees, and the attachment charges will never have been tried, much less, sustained.

"Yet this seems to be the only possible solution of the problem, by which the rights of all the contesting parties can be preserved and their priorities settled under this perplexing and illogical condition of the law, which has been brought about by requiring an acceptance by the mortgagee.

"Speaking for myself alone, I think there never was any logic, reason or common sense in the rule requiring acceptance. On the contrary, a mortgage on its face is a benefit to the secured creditor. It can do him no possible injury. His acceptance of a deed is presumed, when it is beneficial, as between him and the grantor [Kuh v. Garvin, 125 Mo. l. c. 560], and reason and common sense would presume the same thing as between him and the unsecured creditors of a mortgagor. [Long v. Mining Co., 68 Mo. l. c. 431; Sieferer v. St. Louis, 141 Mo. l. c. 595.]

"But 'lex scripta est' according to judicial interpretation and there is no relief except through legislative enactment, which in our direct and practical age, can not come too quickly for the welfare of the people and for the ending of this entanglement.

## "V.

"It is not necessary to examine specifically the multitude of instructions given or refused in this case. Enough has already been said to show that the judgment of the circuit court must be reversed and the cause remanded, and that if the secured creditors do not interplead or replevy, or if the plaintiff does not proceed in equity, no recovery can ever be sustained upon the attachment suit, under the facts shown by this record.

"The judgment below is reversed and the cause remanded."


A motion for rehearing was filed and one of the judges of that division having dissented from the order overruling the motion, the cause was transferred to the court in Banc, where it has since been fully re-argued, and in addition to the propositions formerly relied on, the appellant now urges, 1st; that the deed of trust having been made without the knowledge or consent of the beneficiaries and not having been accepted by at least two of them before the attachment writ was levied, "the effect of the deed of trust was to place on record a false showing of the title of defendant's property, and the effect was to hinder and delay defendant's other creditors. The conveyance is therefore fraudulent and void as to the other creditors, and will sustain attachment;" and 2d; that the deed of trust constitutes fraud in law, notwithstanding there was no fraud in fact in the case, and defendant contends that Tebbetts as surety for the debts secured by the deed of trust had a right to accept the deed of trust (which he did), and hence so much of the opinion as holds that the debts to the Cincinnati banks are junior in priority to the attachment of plaintiff should be modified.

After full deliberation and consideration we have concluded that the delivery of the deed of trust to Harding, as trustee for the three secured creditors and his acceptance of it, constitutes a good delivery of the deed of trust, which enured to the benefit of all the beneficiaries therein named, and as it was not disclaimed by any of them, within a reasonable time after they had notice of it, their acceptance thereof must be presumed.

This question has lately been considered by division No. 2, in the case of Fearey v. O'Neill, 149 Mo. 467. In that case it appeared that one Miller was indebted to various persons for goods sold, money loaned, and services rendered. He gave a deed of trust on his stock of goods to Fearey, as trustee, "with the right upon default to take immediate possession of said goods and sell the same in any manner he should see fit and after paying first the costs of executing said trust, he should pay the indebtedness secured by said deed in proportion to the amounts of the said notes, and the balance, if any, to said Miller." The notes were not paid, and the trustee took possession of the stock. The same day an attachment was levied on the goods, and the trustee replevied them. There was no acceptance by any of the beneficiaries. Division No. 2, speaking through GANTT, C. J., held that the trustee's acceptance for the preferred creditors, with the presumption of its acceptance by the beneficiaries, made out a *prima facie* case, and that, "Kuh v. Garvin, 125 Mo. 547, did not change the universally accepted rule that as between the parties to the deed, the beneficiaries were presumed to accept it if beneficial to them [Tompkins v. Wheeler, 16 Peters 118; Brooks v. Marbury, 11 Wheaton 78]," and further held that Kuh v. Garvin, was inapplicable to the case, adding: "Here the deed was made directly to a trustee for the benefit of these preferred creditors, and the legal title passed at once to him and was accepted by him for the benefit of those creditors. The conveyance was absolute, and contained no

expressions requiring the assent of these creditors.   In such cases, even in those jurisdictions which hold the assent of creditors necessary where the conveyance is made directly to them, it is ruled that, where the conveyance is made directly to a trustee for the benefit of creditors, the legal title passes for the benefit of creditors, without further evidence of assent on the part of the beneficiaries.   [Cunningham v. Freeborn, 11 Wend. 240; Tompkins v. Wheeler, 16 Peters 118; Brooks v. Marbury, 11 Wheaton 78; Halsey v. Whitney, 4 Mason 206; Furman & Co. v. Fisher, 4 Cald. 626.]   Said the Supreme Court of the United States in Brooks v. Marbury, 11 Wheaton loc. cit. 97:   "Deeds of trust are often made for the benefit of persons who are absent, and even for persons who are not in being.   Whether they are for the payment of money, or for any other purpose, no expression of the assent of the persons for whose benefit they are made has ever been required as preliminary to the vesting of the legal estate in the trustee."

As early as the case of Major v. Hill, 13 Mo. 248, it was held in our State, that:   "Where a debtor without the knowledge of the creditor conveys to a trustee to secure the debt, it is valid, unless within a reasonable time after the fact comes to the knowledge of the creditor he disclaims it." This was followed in Pearce v. Dansforth, 13 Mo. 360.

In Kane v. McCown, 55 Mo. l. c. 198, it was objected that there had been no delivery of the deed to Calhoun, plaintiff's grantor, but this court said:   "The deed to Calhoun was executed, acknowledged and recorded, and this is equivalent to a delivery.   No formal delivery was necessary, as the law presumes a delivery under such circumstances."

In Huey v. Huey, 65 Mo. l. c. 693, it was said:   "It is laid down in Greenleaf's Evidence, vol. 2, sec. 297, that, 'the delivery of a deed is complete when the grantor or obligor has parted with his dominion over it, with intent that it shall pass to the grantee or obligee; provided, the latter

assents to it, either by himself or by his agent.' The concluding paragraph in relation to the assent of the grantee is unimportant in the present case, as we are considering only what is required on the part of the grantor. Besides, the assent of the grantee is always presumed, where the instrument is beneficial to him."

In Ramsey v. Otis, 133 Mo. l. c. 95, GANTT, C. J., said: "In Cannon v. Cannon, 26 N. J. Eq. 316, the court says: 'To make delivery of a deed, it is not necessary it should actually be handed over to the grantee, or to another person for him. It may be effected by words without acts or . . . . by both acts and words. Indeed, it may be made though the deed remains in the custody of the grantor.' [Sneathen v. Sneathen, 104 Mo. 201; Standiford v. Standiford, 97 Mo. 233.] In Tobin v. Bass, 85 Mo. 654, it was held that 'while the delivery of a deed is necessary to make it effectual in passing title,' yet 'when a deed to a minor child is absolute in form and beneficial in effect, and the father and grantor voluntarily causes the same to be recorded, acceptance by the grantee will be presumed, and such facts constitute, *prima facie*, a delivery.' "

In Appleman v. Appleman, 140 Mo. l. c. 313, it appeared that the deed was properly executed and delivered to a third person, with the direction to hold it until called for by the proper person, and it was said: "Under these circumstances we think the deed was well delivered, the rule being in respect to a grantee not under disability 'that when such grantee is aware of the conveyance, and does not dissent, and the conveyance is positively beneficial to him or her, acceptance will be presumed.' [Hall v. Hall, 107 Mo. 101; Standiford v. Standiford, 97 Mo. 231.]"

Ensworth v. King, 50 Mo. l. c. 483, is peculiarly applicable to the case at bar. There it appeared that the debtor executed a mortgage to secure one of his non-resident creditors, and placed it on record. Subsequently the property

covered by the mortgage was seized under writs of attachment by the unsecured creditors. The mortgagee had no knowledge of the mortgage until after the attachment writs were executed, but he then assented to and ratified the mortgage. WAGNER, J., said: "It is insisted that the mortgage was absolutely void because made without the previous knowledge of the grantee, and that the plaintiff therefore acquired nothing by his purchase." (The plaintiff was the assignee of the mortgagee). "And this view was taken of the transaction by the court. The general rule is that where an instrument is executed in favor of a party for his interest, he will be presumed to· assent thereto until he manifests his dissent, after being duly notified. That the mortgage was honestly and fairly made for the purpose of securing a just debt is not attempted to be denied, nor is there anything to show that it was intended to delay or defraud creditors. No such pretense is set up by the parties combating its validity. The case shows that Breckenridge was merely anxious to secure this debt; that he had a large quantity of real estate, and the parties all subsequently believed that he had enough to pay all his debts and have something left. The record is utterly barren of all facts which have even a tendency to impeach the good faith of the transaction. Breckenridge had the right to prefer one creditor to another, and his acts in that respect can not·be questioned, providing he did nothing with a fraudulent view, or which operated to hinder or delay his other creditors. Nothing of the kind is pretended or set up. I think the court committed error in pronouncing the mortgage entirely void, and for this reason the judgment will be reversed and the cause remanded."

The rule in Missouri therefore is that where the grantor has relinquished dominion over a properly executed deed the delivery is complete, and where the conveyance is clearly beneficial to the grantee or beneficiary his acceptance will be *prima facie* presumed, until he, after notice of the grant,

within a reasonable time, disaffirms or refuses to accept the grant.

The adjudications in other jurisdictions are conflicting upon the necessity of showing an acceptance. In 9 Am. and Eng. Ency. of Law (2 Ed.), p. 161, it is said: "While delivery is essential to the transfer of title, it is not sufficient. Title rests in the grantee when he accepts a duly executed deed. Any words or acts which show an intention to receive title will be sufficient to prove acceptance. When a deed clearly beneficial to an infant or a person under disability is given to him or to a third person for his use and benefit, the law presumes that it is accepted by him. This presumption may be rebutted by evidence of dissent. The law also presumes that a deed clearly beneficial to an adult is accepted by him when it is placed in the hands of a third party for his use and benefit. There are, however, some authorities which dissent from this view. They hold that evidence of acceptance or of some act which in law is equivalent to an acceptance is necessary."

The weight of authority is clearly that acceptance will be presumed where the grant is beneficial. This rule obtains in Alabama, Connecticut, Illinois, Indiana, Massachusetts, Missouri, New Hampshire, New Jersey, North Carolina, Ohio, Pennsylvania, and Tennessee, and is the rule followed by the Supreme Court of the United States. In Kentucky, Wisconsin, Iowa and Maine knowledge of the execution and delivery of the conveyance and some act of acceptance is held to be necessary.

It is generally held that an acceptance relates back to the delivery, but in Indiana, Iowa, Massachusetts, Vermont, Wisconsin and Maine the doctrine obtains that if an attachment writ is served between the date of delivery and that of acceptance, the acceptance will not relate back to the delivery, but the attaching creditor will thereby acquire a priority [9 Am. and Eng. Ency. of Law (2 Ed.), p. 161].

The same rule is announced in Jones on Chattel Mortgages (3 Ed.), sec. 106, and in Cobbey on Chattel Mortgages, sec. 413.

We think, however, that the rule in Missouri, and in the majority of the States, that acceptance will be presumed where the conveyance is clearly beneficial to the grantee or beneficiary, in the absence of a disavowal or disaffirmance by him, is the better rule and is more logical and promotive of justice.   In this view it is immaterial that the grantee or beneficiary did not know of the conveyance before other persons seized the property under attachment.   In the case of infants and persons under disability acceptance is presumed where the grant is beneficial, because of the legal incapacity of the grantee to accept.   In the case of adults it is *prima facie* presumed because it is beneficial.   Under the rule that obtains in the States pointed out, requiring express acceptance before the property is seized by process of law, some grotesque difficulties and incongruities necessarily ensue. Under this ruling a failing debtor is admitted to have a right to prefer one or more creditors.   If they are all residents of the same place with the debtor or can be reached by telegraph, they can be notified and their acceptance obtained before the unsecured creditors can attach, and hence the preference is effective.   But if any one of the preferred creditors happens to be temporarily traveling in Europe or is absent from home or lives at a point any considerable distance from a telegraph station, and hence there is not sufficient time to notify him and get his acceptance, the preference to him is unavailing as against attaching creditors, although it is good as to the other preferred creditors who were accessible.   Thus while recognizing the right of a failing debtor to prefer one or more of his creditors, by executing a mortgage in their favor, thereby doing all he can do to effectuate his purpose, such a construction makes the proximity or accessibility of residence of the preferred creditors

an element in determining the efficacy of the act of the debtor.

We have therefore concluded to modify the opinion delivered in this case in Division No. One, and to hold that the delivery of the deed of trust to Harding as trustee for the secured creditors, is a good delivery, and that the acceptance of the beneficiaries therein named must be presumed, as they did not disaffirm it after they had notice of it, and hence that their rights are paramount to those of the plaintiff whose rights were obtained by attachment after the execution of the deed of trust to the trustee, after he had accepted it and placed it upon record, after he had taken possession of the property and after he had been for nearly a month engaged in selling it for the benefit of the beneficiaries.

There is not the slightest evidence of fraud in this case. The debts secured were each and all *bona fide*. The debtor did only what he had a right to do. Hence there is no merit in the plaintiff's first contention that "the effect of the deed of trust was to place on record a false showing of the title of defendant's property, and the effect was to hinder and delay defendant's other creditors. The conveyance is therefore fraudulent and void as to other creditors, and will sustain attachment." There was no false showing on the record. The record spoke the truth. The other creditors were not hindered or delayed, except as all honest preferences hinder and delay unsecured creditors. There was no fraud, for the debts secured were *bona fide*, and the conveyance was for the sole benefit of the creditors. There was no secret use for the debtor. Hence the cases cited by plaintiff which correctly hold that conveyances fair on their face but intended for the secret use of the debtor, are fraudulent, have no application. Neither is the second contention of the plaintiffs, that the deed of trust is fraudulent in law, tenable. There is, of course, fraud in law as distinguished from fraud

in fact. But no such condition is present in this case. The debtor only did what he had a lawful right to do—made a preference. The secured creditors only did what the law allows them to do—accepted preference. There was no covin, collusion, secret trust or prohibited act done or attempted to be done in the case. It is a clean, lawful transaction, which under the law must be upheld. The plaintiffs made out no case and the trial court should have so instructed the jury. The judgment of the circuit court is therefore reversed, and the cause remanded to be proceeded with in accordance herewith. GANTT, C. J., SHERWOOD, BRACE and VALLIANT, JJ., concur; BURGESS and ROBINSON, JJ., dissent.