PULLIS et al., Respondents, v. PULLIS BROTHERS IRON COMPANY et al., Appellants.

In Banc, June 30, 1900.

1. **Receiver:** VACATING APPOINTMENT. An order appointing a receiver for property held by defendants as purchasers under a deed of trust previously executed to certain preferred creditors by an insolvent corporation, will be vacated, where the petition under which said appointment was made does not allege, nor the evidence in support of it tend to show, that the debts secured by said deed of trust were not honest, or that the deed of trust was fraudulent, or that the parties in possession are insolvent, or that waste has been committed or is threatened, or that the property in question is perishable.

2. **Private Corporation:** DEED: SEAL. If a private corporation has no corporate seal, none is required to be affixed to the deed of such corporation.

3. **Justice of the Peace:** JUDGMENT: APPEAL. Where a defendant appeals from the judgment of a justice of the peace, and his appeal is dismissed for failure to file the requisite appeal bond, the judgment of the justice is left in full force.

4. ——: ——: TRANSCRIPT: LIEN UPON REAL ESTATE. In such case, no transcript of the judgment of the justice can legally be filed for the purpose of creating a lien upon real estate, while the appeal from said judgment is pending in the circuit court; and when a transcript was prematurely filed, pending such appeal, the lien of the judgment did not attach until the appeal had been finally disposed of.

5. ——: EXECUTION: ISSUED TO WRONG CONSTABLE. The question whether or not an execution from a justice of the peace was issued to the constable of a township or district other than that in which the defendant resided, is not open to inquiry in a collateral proceeding.

6. **Executions:** PRIORITY OF LIENS: SALE. Unless a judgment is enforced within three years of rendition or revived, a subsequent judgment, if so enforced or revived, becomes a prior lien, and a sale thereunder carries the title.

7. **Sale En Masse:** LOTS COVERED BY PLANT. The sale of several lots of ground by a sheriff or trustee will not be set aside because made in bulk, where the owner has treated them as one lot, by erecting buildings thereon which are used together as a manufacturing plant.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

REVERSED AND REMANDED (*with directions*).

*F. J. McMaster, Chas. W. Bates* and *Sam'l H. West* for appellants.

(1) On appeal from an order of the trial court in refusing to revoke the appointment of a receiver, this court will review the entire record, and determine therefrom whether there was any ground upon which the receiver should have been appointed or upon which the court should have refused to revoke the appointment, as the case may be. Merriam v. Railroad, 136 Mo. 145; Glover v. Investment Co., 138 Mo. 408. (2) "It is fundamental that, to authorize a receiver, the plaintiff must show that he has a right either to the property itself, or that he has some lien upon it, or that it constitutes a special fund to which he has a right to resort for satisfaction of his claim." Merriam v. Railroad, 136 Mo. 145; Smith on Receiverships, pp. 43 and 552, note 2; O'Mahoney v. Belmont, 62 N. Y. 143; Ashurst v. Lehman, 86 Ala. 370. A receiver should not be appointed pending a suit to determine the title to the property claimed by defendant, unless on the showing made the court is reasonably satisfied that plaintiffs will recover at the final hearing. Smith on Receiverships, pp. 14, 38, 39; 20 Am. & Eng. Ency. of Law (1 Ed.), pp. 321-322; Vanse v. Woods, 46 Miss. 120; Rollins v. Henry, 77 N. C. 467; Rider v. Baker, 93 Fed. Rep. 16; Emerson & Wall's Appeal, 95 Pa. St. 258. Nor, where the property is in the possession of defendant claiming title, should a receiver be appointed pending the trial, unless in case of urgent necessity and in order to protect the property from imminent loss. Merriam v. Railroad, 136 Mo.

Pullis v. Pullis.

145; Smith on Receiverships, p. 14, note 2; p. 44, par. (f); 20 Am. & Eng. Ency. of Law (1 Ed.), p. 46, par. (3); Shelecht's Appeal, 60 Pa. St. 172; Dozier v. Logan, 101 Ga. 173; Rollins v. Henry, 77 N. C. 467; Rider v. Baker, 93 Fed. Rep. 16; Elwood v. Bank, 41 Kan. 475; Ogden v. Waterworks, 16 Utah, 440; Brundage v. Ass'n, 11 Wash. 277. No receiver should be appointed where plaintiff's interests are protected by *lis pendens* notice. Gregory v. Gregory, 33 N. Y. Sup. Ct. Rep. 34; Clay v. Clay, 86 Ga. 359. (3) The deed of trust of the Pullis Brothers Iron Company·was made by authority of the board of directors. It was authorized by the stockholders, and has been knowingly acquiesced in by them ever since, and was thus ratified by them and binds them, the directors and the corporation. Chouteau v. Allen, 70 Mo. 290. The property conveyed by the Pullis Brothers Iron Company by its deed of trust was honestly applied to the payment of *bona fide* debts, and even though there were defects in the execution of the deed, the corporation and its stockholders acquiescing in the conveyance, no one else can question it. Refining Co. v. Elevator Co., 101 Mo. 209. The board of directors of a corporation may use the corporate property to pay or secure the debts of the corporation, although thereby the corporation is disabled from carrying on its business. Bank v. Iron Co., 97 Mo. 38. The board of directors may prefer such creditors of the corporation as they may deem best, the same as an individual may. So the directors may prefer themselves, but in such case must assume the burden of proving the *bona fides* of their debts. Schufeldt v. Smith, 131 Mo. 280; Butler v. Land & Mining Co., 139 Mo. 467. A debtor may prefer his wife. Riley v. Vaughan, 116 Mo. 116. (4) A corporation may act and make contracts without a seal, and is bound by its contracts though its seal is not attached. R. S. 1889, sec. 2511; R. S. 1899, sec. 974; Preston v. Mo. Co., 51 Mo.

43; Campbell v. Pope, 96 Mo. 468; Taylor on Corp. (2 Ed.), sec. 248. The scroll will be deemed the seal of the corporation where it has no other. Railroad v. Hooper, 160 U. S. 514; Kansas City v. Railroad, 77 Mo. 180. Authority given officers of a corporation to make a conveyance is authority to adopt a seal for the corporation for that transaction, if the corporation has no seal and one is by law required. Mo. Works v. Ellison, 30 Mo. App. 67; Grashwiler v. Willis, 33 Cal. 11; s. c., 91 Am. Dec. 607; Johnson v. Crowley, 25 Ga. 316; s. c., 71 Am. Dec. 173; Foundry v. Hovey, 21 Pick. 417; Tenney v. Lumber Co., 43 N. H. 343; Thayer v. Mill Co., 51 Pac. Rep. 203; 2 Cook on Corp. (4 Ed.), sec. 722 and citations. (5) Even if it could be held that a seal were required and that this deed was not sealed, it still conveyed the equitable title. The equitable title is good as a defense in an action at law under our code system, which permits equitable titles to be pleaded in actions at law. It is always good in equity. Harrington v. Fortner, 58 Mo. 468; McClurg v. Phillips, 57 Mo. 214; Precious Blood Society v. Elsythe (Tenn.), 50 S. W. Rep. 759; Miller v. Railroad, 36 Vt. 452; Todd v. Eighmie, 73 N. Y. St. Rep. 671; Township v. Stebbens, 109 U. S. 349. After default, the possession of the real estate by the mortgagee in an unsealed mortgage (or the possession of those claiming under him) cannot be divested without payment of the debt secured by the mortgage. Harrington v. Fortner, 58 Mo. 468. So a plaintiff holding the legal title can not recover in ejectment against a defendant who holds a valid contract to purchase what, in equity, is deemed the equitable title. Harris v. Vinyard, 42 Mo. 568. (6) The original sole plaintiff in this suit, Mrs. Cora B. Pullis, a beneficiary in the deed of trust, having accepted said deed, is estopped from maintaining this suit. She elected to accept the deed, and defendant has expended money on the faith of the validity of the deed. Nat. Bank v. Cleve-

Pullis v. Pullis.

land Co., 71 N. Y. St. Rep. 57; Fox v. Windes, 127 Mo. 511; Bobb v. Bobb, 99 Mo. 578; Phillips v. Wooster, 3 Abbott Pr. Rep. N. S. 475; Groves v. Rice, 148 N. Y. 227; Frierson v. Branch, 30 Ark. 453; Ewing v. Cook, 85 Tenn. 332.    (7) Other creditors joining in a creditor's bill take the case as they find it, and can not give to the suit a vitality it did not have when begun.    If the suit could not be maintained without their joinder, it can not be maintained by virtue of their joinder.    (8) Laches on the part of all the creditors under the circumstances shown by the evidence is a bar to the maintenance of this suit.    Kline v. Vogel, 90 Mo. 239; Murdock v. Lewis, 26 Mo. App. 234; Landrum v. Bank, 63 Mo. 48; Bliss v. Prichard, 67 Mo. 181.    (9) The execution and sale under the justice of the peace judgments carried the title, and is a bar to plaintiffs in this case.    On dismissal of the appeal in the circuit court, the justice's judgment appealed from is valid and binding, and the transcript thereof filed in the circuit clerk's office supports the execution, levy and sale of the real estate.    McAnow v. Matthis, 129 Mo. 142; Sachse v. Clingingsmith, 97 Mo. 406; Waddell v. Williams, 50 Mo. 216; Huhn v. Lang, 122 Mo. 600.

*Thomas B. Harlan* and *Johnson, Houts, Marlatt & Hawes* for respondents.

(1) The court has decided in the case of Merriam v. Railroad, 136 Mo. 145, that in an appeal from an order of the trial court in refusing to revoke the appointment, the record will be reviewed.    According to the great weight of authority that review should be directed to discovering whether the lower court has been guilty of an abuse of discretion, an "abuse of power" in making the appointment.    If it has not, the appellate court will not interfere with the appointment.    Alderson's Beach on Receivers, 112, 118;

Pouder v. Tate, 96 Ind. 330; Naylor v. Sidener, 106 Ind. 179; Wolfe v. Chaflin, 81 Ga. 64; Journey v. Brown, 2 Dutch. 111; Beaumont v. Beaumont, 166 Pa. St. 615; Crittenden v. Coleman, 70 Ga. 293; Sanders v. Slaughter, 89 Ga. 34; Nunocks v. Shingle Co., 110 N. C. 230; Flecker v. Railroad, 48 Kan. 577; Cemetery Co. v. Drew, 36 S. W. Rep. 802; Jacobs v. Gibson, 9 Neb. 380; 20 Am. & Eng. Ency. of Law (1 Ed.), 19; 2 Story Eq. Jur. (12 Ed.), 831. The same rule applies in the matter of granting injunctions; in the absence of "manifest abuse" the discretion of the lower court will not be interfered with. On these two subjects, viz., appointment of receivers and granting injunctions, the discretion of the trial court is deferred to much more than in other equity proceedings. Council v. U. S., 57 Fed. Rep. 85; Thompson v. Nelson, 71 Fed. Rep. 339; Cosby v. Weaver, 99 Ga. 143; Road Co. v. Frazer, 98 Mich. 140. (2) The court's action in appointing a temporary receiver was amply justified. This was not a final hearing on the cause, nor does the record contain plaintiffs' whole case, but only a *prima facie* showing of it; if, therefore, the trial court was reasonably satisfied that there was a strong probability that plaintiffs would prevail in the end, and in the meantime the property was subject to loss or damage, it was his duty to make the appointment. Smith on Receivers, 39; 20 Am. & Eng. Ency. of Law (1 Ed.), 21; Lenox v. Notrebe, Hempstead (U. S.), 226. The defendants not being the undisputed owners of the property, the insurance thereon was vitiated and the valuable buildings and machinery liable to be entirely lost to the estate. It was the duty of the court to prevent the possibility of such loss. The property might have been sold at any time under tax suits pending. Where realty, the subject of a suit is about to be sold for the non-payment of taxes, a receiver may be appointed. Durasmont v. Patten, 4 Lea (Tenn.), 597. (3) The deed of trust to Pullis, as trustee, was and is void,

because there is no common corporate seal attached thereto.
R. S. 1889, sec. 2399; R. S. 1899, sec. 904; R. S. 1889, sec.
2314; R. S. 1899, sec. 982; Perry v. Ruggles, 1 Mo. 460.;
Garrett v. Land Company (Tenn.), 29 S. W. Rep. 726;
Caldwell v. Mfg. Co. (N. C.), 28 S. E. Rep. 475; Mott v.
Danville Seminary, 129 Ill. l. c. 412; Seminary v. Mott, 136
Ill. l. c. 291; Richardson v. Scott River W. and M. Co., 22
Cal. 150; Duke v. Markham, 105 N. C. 131; Mills Co. v.
Montieth, 2 Oregon 277; Osborne v. Tunis, 25 N. J. L. 658;
3 Washb. Real Property, p. 288; In re Mill Company, 3
Saw. l. c. 90.   Laws respecting conveyances of land are and
should be strictly followed.   Garrett v. Land Company, 29
S. W. Rep. l. c. 730; Harley v. Ramsey, 49 Mo. 309; Brown
v. Dressler, 125 Mo. 589.   Scrolls in lieu of seals are made
substitutes therefor by statute, but to avail it must appear
from the face of the instrument that it is sealed.   R. S. 1889,
sec. 2388; Cartmill v. Hopkins, 2 Mo. 220; Grimsby v. Ad-
ministrators, 5 Mo. 280; Walker v. Keile, 8 Mo. 301.   A
facsimile of a seal of a corporation printed upon blank forms
is not sufficient.   Bates v. Railroad, 10 Allen 251.   (4)
The deed of trust to Christen A. Pullis as trustee was and is
void, because it was never authorized by the stockholders or
by the board of directors.   (5) The beneficiaries under this
deed of trust do not stand in the position of purchasers for
value.   They have parted with nothing.   An attempt was
made to make a legal preference; it failed, and they are left
just where they were before.   Woolen Mills Co. v. Monteith,
2 Oregon l. c. 283; 1 Jones on Mortgages, 477.   (6) There
can be no estoppel under a void deed.   Douthitt v. Stinson, 63
Mo. l. c. 279; Reinhard v. Mining Co., 107 Mo. 616; State
ex rel. v. Branch, 151 Mo. l. c. 639.   (7) Plaintiffs are not
barred by any laches.   Dobyns v. Rice, 22 Mo. App. 448.
Where a party has a clear right in equity mere delay in bring-
ing action should not prevent recovery.   Spurlock v. Sproule,

'72 Mo. 503; Bradshaw v. Yates, 67 Mo. 221. (8) The sales under execution on the judgments of the Tennessee Coal, Iron and Railway Company were void, and conveyed no title. The filing of the returns of the justice in the office of the clerk of the circuit court in each of the appeals rendered the justice's judgment void *eo instanti*. R. S. 1889, secs. 6339, 4071; Earl v. Hart, 89 Mo. 263; Munley v. King, 40 Mo. App. 531; Lee v. Kaiser, 80 Mo. 431; Haunnell v. Wise, 54 Mo. App. l. c. 16. The statute authorizes dismissal of the appeal in but one single case, viz., that of failure to give notice of appeal. R. S. 1889, secs. 6344, 4075; Williams v. Lewis, 47 Mo. App. l. c. 659. The executions issued from the justice were issued to the constable of the Fourth justice district. The office of the company was located in the Third justice district. No execution having been issued to the constable of the district in which the defendant resided, no execution could issue from the office of the clerk of the circuit court. R. S. 1889, secs. 6287, 4019. This is such a direct proceeding to set aside the execution sales as is contemplated in Sachse v. Clingingsmith, 97 Mo. 406; and Kuhn v. Lang, 122 Mo. 600. (9) The advertisement was irregular, in that it does not advertise the sale of any property. The use of the word "following," without descriptive words following, was calculated to throw doubt upon the sufficiency of the adver-tisement and restrain buyers from purchasing. Mistakes in publication, though slight, will vitiate a sale. Wolff v. Ward, 104 Mo. 127; R. S. 1889, sec. 4929; Gordon v. O'Neil, 96 Mo. 356; State ex rel. v. Yancey, 61 Mo. 391; Wellshear v. Kelly, 69 Mo. 355; Bouldin v. Ewart, 63 Mo. 330. Inadequacy of price, combined with other defects or irregularities, will defeat the sale. Holdsworth v. Shannon, 113 Mo. 508; Stoffel v. Schroeder, 62 Mo. 147; Danham v. Hoover, 135 Mo. l. c. 216; Hardware Co. v. Building Co., 132 Mo. l. c.

456; Gordon v. O'Neil, 96 Mo. l. c. 355; Warder Co. v. Allen, 63 Mo. App. l. c. 459.

MARSHALL, J.—This is an appeal under the Act of 1895 (Laws 1895, p. 91) from an order of the circuit court of the city of St. Louis refusing to revoke an interlocutory order appointing a receiver.

The vital matters in controversy can be more readily grasped by a chronological statement of the facts, pleadings and proceedings.

Prior to and on March 25, 1896, the Pullis Brothers Iron Company was a Missouri corporation, engaged in the manufacture of iron for architectural purposes. It owned a single plant on the corner of Eighth and Hickory streets, composed of a main building located on and covering the whole of lots numbered nine to nineteen, inclusive, in block number one of Park's addition to the city of St. Louis, and having a front of two hundred and sixty-eight feet on Eighth street, by an uniform depth eastwardly of one hundred and twenty feet to an alley, and a smaller building attached to and connected therewith and forming a part thereof, which was used as a pattern shop, storage room and drafting room, and which was located upon and covered the whole of lots seven and four, and four feet off of the southern part of lot number eight in block number one of Park's addition, and which had a front of twenty-four feet on the west side of Seventh street by a depth westwardly of one hundred and twenty feet to an alley. In other words, the main building fronted on the east side of Eighth street, while the smaller building fronted on the west side of Seventh street, and each had a depth to the alley that separated them.

On the day aforesaid the officers of the company were, Thomas R. Pullis (the husband of the plaintiff, Cora B. Pullis), president; Christen A. Pullis (one of the defend-

ants), secretary; Thomas R. Pullis, Christen A. Pullis, Augustus Pullis, Jr., Wm. C. Mueller and Rudolph Rodke, directors; and these directors, together with Mrs. A. E. Pullis, constituted all of the stockholders of the company.

The company was heavily in debt. It owed the State Bank of St. Louis $23,700, and Mrs. Harriet Pullis was indorser therefor; it owed Mrs. Cora B. Pullis, the plaintiff, $6,073.33; it owed Mrs. C. A. Pullis, $9,667.19; it owed Mrs. Anne Hemphill (who was then dead), $4,000, and it owed other persons about $36,000, among whom was the Tennessee Coal, Iron and Railroad Company whose claim amounted to $713.32. On or about March 20, 1896, the last named company obtained two judgments against the defendant company, aggregating said sum, before a justice of the peace, and on the same day the judgment was rendered the defendant company took an appeal to the circuit court, but on the twenty-third of March, 1896, the plaintiff company filed transcripts of said two judgments of said justice of the peace, in the office of the clerk of the circuit court.

This was the status on March 25, 1896, when the directors of the defendant company had a meeting. All of the directors were present, and Mrs. A. E. Pullis, the only other stockholder of the company who was not a member of the board of directors, was represented at the meeting by William Sommerville, who had full power and authority to act for her. It was decided by the directors and stockholders at that meeting (as it had been previously decided at a meeting held on the twenty-first of March, 1896), to prefer the indebtedness to the State Bank of St. Louis, Mrs. Cora B. Pullis, Mrs. C. A. Pullis and Mrs. Hemphill, and accordingly a deed of trust was authorized by the directors and stockholders (Thomas R. Pullis alone dissenting, as to which there is much doubt, however), to be made, and it was so properly made, conveying all the property before described, together

with the machinery, etc., in the plant, to Christen A. Pullis, as trustee for said preferred creditors, and the deed of trust was duly recorded the same day, at 4:28 p. m., in the office of the recorder of deeds of the city of St. Louis. The deed of trust recites, in its body, "said corporation having no seal," and it is conceded that the corporation had never adopted a seal, and it is executed in the name of the "Pullis Brothers Iron Company," "by T. R. Pullis, President," and the word "[Seal]" in brackets, appears opposite the name of the company and of the president. The deed of trust is acknowledged by Thomas R. Pullis who swore that it, "was signed and sealed in behalf of said corporation, by authority of its board of directors, and that said corporation has no corporate seal," but in an affidavit, filed by him in the circuit court upon the hearing of this motion, he swore that the giving of such a deed of trust was never discussed at any meeting of the directors or stockholders, and that no resolution to give a preference or to make an assignment was ever passed *unanimously,* "as he opposed· them all." (If there was no meeting or discussion it is not clear how he opposed a resolution, and if there was a meeting it was not necessary to its validity that such a resolution should have been passed unanimously.) The trustee thereupon took immediate possession of the property pursuant to the terms of the deed of trust.

On the same day, March 25, 1896, and at the same meeting, the directors and stockholders authorized a general assignment for the benefit of its creditors to be made, and it was so made, and recorded at 4:31 p. m. (just three minutes after the deed of trust was recorded), which was executed by Thomas R. Pullis, in exactly the same manner as the deed of trust, and which recited that it was made subject to the deed of trust. Subsequently all of the creditors proved up

their claims before the assignee—the preferred creditors among the number.

On June 23, 1896, Thomas R. Pullis, who acted for his wife, the plaintiff Cora B. Pullis, requested the trustee to advertise the property for sale and he did so, fixing the date for the thirtieth of July, 1896, and at that sale Thomas R. Pullis became the purchaser thereof in bulk, for $28,000, but when the deed was tendered to him therefor on the tenth of August and the purchase money demanded, he refused to accept the deed or to pay the money. The trustee then readvertised the property for sale under the deed of trust on September 5, 1896. Thereupon on August 17, 1896, the plaintiff herein, Cora B. Pullis, instituted a suit against Pullis Brothers Iron Company, Christen A. Pullis, trustee, State Bank of St. Louis, Harriett Pullis, Mrs. C. A. Pullis and Anne Hemphill, in which she asked that Christen A. Pullis be removed as trustee under the deed of trust for conspiring to defraud her of her interest under that deed, and alleged that there was some doubt as to the power of the trustee to convey a good title, and asking that the advertised sale on September 5, 1896, be enjoined. Upon a hearing the circuit court refused to remove the trustee or enjoin the sale, which then proceeded regularly, and at that sale Mrs. Harriett Pullis, the indorser on the notes for $23,700 held by the State Bank of St. Louis, and who had been in the meantime compelled to take up said notes, and was thereby subrogated to the rights of the bank under the deed of trust, became the purchaser of the property for the sum of $20,000. The trustee sold the whole plant in bulk, and there was no request from any one that it be sold otherwise until after it had been offered as a whole and the bids made for it as a whole, and then such request was made by Thomas R. Pullis, himself a delinquent bidder by reason of his conduct at the

prior sale, and even he did not express a desire to bid on it separately.

After her purchase under the deed of trust, Mrs. Harriett Pullis went into possession and remained in the exclusive and undisturbed possession of the property until the appointment of the receiver in this case; that is, from September 5, 1896, to November 27, 1899. Prior to the day of sale however, to-wit, on May 27, 1896, the buildings on the property were wrecked by the cyclone that struck St. Louis on that day, and after her purchase, Mrs. Pullis was unable to rent the property until after she had spent over $4,000 in rebuilding the plant, but all the time had been at the expense of keeping a watchman there. Just before this suit was begun she leased it to the defendant, the St. Louis Iron and Steel Foundry Company, for five hundred dollars a year.

Reverting now to the two judgments obtained before a justice of the peace, on March 20, 1896, and appealed by the defendant company on the same day, the plaintiff filed certified transcripts thereof in the circuit court clerk's office on the twenty-third of March, 1896, with a view to having those judgments become liens on the real estate of the defendant, under the provisions of section 6287, R. S. 1889. On the seventh of January, 1897, the plaintiff filed motions in those cases in the circuit court for additional appeal bonds, which the court sustained, and upon defendant's failure to give such additional bonds the circuit court dismissed the appeals in both cases. On the twenty-sixth of March, 1897, the justice of the peace issued executions on the judgments, which in due course were returned *nulla bona,* and on the twenty-eighth of June, 1897, additional transcripts, showing the *nulla bona* return of the executions, were filed in the circuit court clerk's office, and on the third of July, 1897, the circuit clerk issued executions on said judgments to the sheriff, who

VOL. 157 mo—37

levied upon the property here involved, and sold it under execution, on August 2, 1897, and John G. Patterson became the purchaser thereof, for $875, and he afterwards on August 9, 1897, conveyed it to the defendant Clara C. Pullis, who is a daughter of Harriett Pullis, and she, on December 23, 1898, conveyed to her said mother lot number 7, and four feet off of the southern part of lot 8, in block number one of Park's addition.

Thus matters rested until August 14, 1899, when the plaintiff, Cora B. Pullis, began this suit against the Pullis Brothers Iron Company, Christen A. Pullis, Mrs. C. A. Pullis, Anne Hemphill, Harriett Pullis and Henry Boemler, assignee. The original petition is not set out in the record, but it is stated therein that it prayed for the appointment of a receiver. Afterwards, the first amended petition was filed, on November 7, 1899, and the Riverside Iron Company which had obtained a judgment against the Pullis Brothers Iron Company, in the St. Louis Circuit Court for $1,039.51, on the fourteenth of May, 1896, was made a party plaintiff, and Clara A. Pullis and the St. Louis Iron and Steel Foundry Company were made defendants, and the name of Anne Hemphill was dropped, as she was dead. This petition sets out the facts, substantially as herein stated, asserts the invalidity of the deed of trust because no seal of the company was attached thereto; avers that it was never accepted by the beneficiaries therein named, and that Anne Hemphill one of the said beneficiaries was dead; alleges that it was executed without authority of the board of directors; avers that the sale under the executions in favor of the Tennessee Coal, Iron and Railroad Company, were void because the appeals from the justice of the peace to the circuit court vacated the judgments of the justice of the peace, and the subsequent dismissal of those appeals for failure to give additional appeal bonds did not have the effect of reviving the judgments of

the justice of the peace; and because the filing of the transcripts of the justice's judgments in the circuit clerk's office pending the appeals was unauthorized; and because after the appeals were dismissed the justice issued executions to the constable of the Fourth district when the place of business of the defendant company was in the Third district; and because in the sheriff's advertisement of sale under the executions he described the property he had levied on under such executions, and then stated that he would sell the "following" property, without re-describing the property he had levied on, instead of saying he would sell the "foregoing" property; and because the property was sold in bulk.

The petition then says: "Plaintiffs are willing and do hereby consent that defendants be allowed the sum that the court may find was actually paid for the purchase price of said real estate when sold under executions as aforesaid, as a prior claim to be paid out of the assets of the Pullis Brothers Iron Company." The petition then prays for a cancellation of the deed of trust, of the trustee's deed to Harriett Pullis, of the sheriff's deed to Patterson and his deed to Clara C. Pullis and her deed to Harriett Pullis, for an accounting as to rents and profits, that the property be declared assets of the Pullis Brothers Iron Company and be distributed ratably among its creditors, and for the appointment of a receiver *pendente lite*. Upon the filing of the first amended petition, unverified, on November 7, 1899, the court made an order on the defendants to show cause on November 11, 1899, why a receiver should not be appointed, and on the return day of such order the court heard the application upon voluminous affidavits, which set out the facts herein stated, and on the twenty-second of November, 1899, the court appointed a receiver, and afterwards refused to vacate such appointment, and the defendants (except Pullis Brothers Iron Company and Boemler, assignee) appealed.

On November 27, 1899, the plaintiff filed a second amended petition which is substantially like the first amended petition, with addition that it avers that the defendant, The St. Louis Iron and Steel Foundry Company, is a Missouri corporation organized by the members of the family of Harriett Pullis for the purpose of using the property, and has taken possession thereof and proposes to change the improvements thereon to serve its purposes; that the property is in need of repair and will greatly depreciate in value; that the taxes have not been paid since 1892, and that a suit is pending to collect them.

## I.

The petition does not charge, and the evidence does not even tend to prove, that the defendants in possession are insolvent, or that the preferred debts are not honest or that the deed of trust is fraudulent or made for any other purpose than to prefer the creditors therein named, or that there is any waste contemplated or permitted which will injuriously affect the parties, or that the property is perishable, and therefore the usual grounds for the appointment of a receiver are totally lacking in this case. [Merriam v. Railroad, 136 Mo. 145 ; Smith on Receiverships, sec. 15, p. 38, *et seq.;* Beach on Receivers (Alderson's Ed.), p. 112 *et seq.*] The plaintiff filed a *lis pendens* so that the defendant in possession could not convey the property to an innocent purchaser for value and without notice, and therefore for this reason the plaintiff showed no right to a receiver in this case. [*Ibid.*]

## II.

The plaintiff, however, contends that her *prima facie* case shows a strong probability that she will prevail in the end, "and this with the fact that the corporation was defunct

and without officials to hold for it or its creditors, the threatened loss of income from the property, its conversion from the purposes for which it was constructed or adapted. the impending danger from tax sales, and the possibility of irreparable loss by reason of failure of insurance, make it the plain duty of the court to take possession and hold for the interest of the prevailing party."

The possibility of loss by failure to insure or to pay taxes is present in every case where a party out of possession sues a party in possession of property, and this plaintiff has the same remedy to guard against such contingencies that other plaintiffs in ordinary actions have. The fact that the corporation is defunct cuts no figure, for it is not in possession and has long since lost its right to the possession. The fact that the new company has leased the property from Mrs. Harriett Pullis and that she is not even alleged to be insolvent, answers the claim that there is any threatened loss of income. The fact that after the injury to the buildings by the cyclone and after she got possession of the property, Mrs. Harriett Pullis spent over four thousand dollars in repairing them, refutes any idea of waste, even if the plaintiff had charged it, and whilst the petition charges that the new company intends to make changes in the arrangement of the building it does not charge that such changes will render the property less valuable. There is absolutely no foundation for the averment that the beneficiaries did not accept the deed of trust. The trustee accepted the deed and took immediate possession of the property, and this enured to the benefit of the beneficiaries. [Kingman & Co. v. Cornell-Tebbetts M. & B. Co., 150 Mo. 282.]

Besides, so far as the plaintiff is concerned, she subsequently ratified and accepted the deed of trust by filing the suit on the seventeenth of August, 1896, asking to have the trustee therein named removed because he was conspiring

against her interests under that deed, and the other bene-
ficiaries are claiming and always have claimed under the
deed of trust.

The directors of the company had a perfect right to
prefer the persons named. [Kingman & Co. v. Cornell-
Tebbetts M. & B. Co., 150 Mo. 282; State ex rel. v. Man-
hattan Rubber Mfg. Co., 149 Mo. l. c. 213.]    There is no
foundation whatever for the charge that the deed of trust
was not executed by the authority of the board of directors.
The giving of such a deed was determined upon at the meeting
of the directors on March 21, and a lawyer was employed to
prepare the deed, and it was authorized and executed at the
meeting of March 25, 1896, when all the directors were
present and all of the stockholders were present in person
or by proxy, and it was ordered executed by authority of all
of the directors and stockholders, except the plaintiff's hus-
band, Thomas B. Pullis, and his vote to the contrary, even
conceding he did so vote, as to which there is grave doubt,
was only one vote out of five directors.

This reduces the "strong probability" of ultimate re-
covery relied on by the plaintiff to two propositions of law;
1st, that the deed of trust is void, because no seal of the
corporation is attached thereto; and 2d, that the sheriff's
deed is void, because there was no judgment upon which
execution could issue, and of these in their order.

1.    The plaintiff contends that under the statutes of
Missouri a corporation can not convey land unless the deed
is sealed with the corporate seal.    It is conceded that an
individual may convey land by a deed not under seal, but
this power is denied to a corporation by the plaintiffs.

The statutory provisions bearing upon the question are
these:    1st, section 2508, R. S. 1889, gives every private
corporation *power*, "to make and use a common seal, and alter
the same at pleasure."    This power is permissive but not

mandatory; 2d, section 2399, R. S. 1889, authorizes any private corporation to convey real estate by deed, "sealed with the common seal of such corporation, and signed by the president or presiding member or trustee thereof," etc., and section 2514, R. S. 1889, is substantially the same; 3d, section 2388 provides that any instrument of writing expressed on the face thereof to be sealed and to which the person executing the same shall affix a scrawl by way of seal shall be deemed to be sealed; 4th, section 2401, requires that all deeds of lands shall be subscribed and sealed by the party granting the same; 5th, the Act of 1883 (p. 20) which prescribed the form of acknowledgments, requires the officer acknowledging the deed for the corporation to state that the seal affixed to the deed is the corporate seal of the corporation and that the instrument was signed and sealed by authority of the board of directors, but 'in case the corporation has no corporate seal, omit the words 'the seal affixed to said instrument is the corporate seal of said corporation (or association) and that,' and add at the end of the affidavit clause, the words, 'and that said corporation (or association) has no corporate seal;' " 6th, the Act of 1893 (p. 117), amended section 2388, R .S. 1889, which recognizes a scrawl to be a seal on all instruments of writing which purport to be sealed, and is in these terms: "The use of private seals in written contracts, conveyances of real estate, and all other instruments of writing heretofore required by law to be sealed (except the seals of corporations), is hereby abolished, but the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof."

It is contended that as the Act of 1893 abolishes seals to deeds, etc., "except the seals of corporations," it was intended to still require corporate deeds to be sealed, and that the Act of 1883 only related to the form of acknowledgment and not

to the manner of executing a deed by a corporation, and therefore the provision in that act requiring the certificate to state that the corporation had no corporate seal is meaningless, and that sections 2399 and 2514 requiring deeds of real estate made by corporations to be sealed with the corporate seal is unrepealed and binding, and therefore the deed of trust in this case is void. Plaintiff relies upon the case of Garrett v. Belmont Land Co., 29 S. W. Rep. l. c. 729, in which the supreme court of Tennessee construed a statute of that State, which is very similar to our statute, and which used the same words "except the seals of corporations," to mean that it should abolish private seals as to deeds as well as contracts when made by individuals and dispensed with the necessity of seals to contracts when made by corporations, but did not authorize a corporation to make a deed to real estate without its corporate seal was attached. That court pointed out that the common law distinctions between contracts under seal and not under seal obtained in that State prior to the adoption of the Code, which contained the provision as to seals, and instanced that an instrument under seal imported a consideration which could not be inquired into in actions at law, while a consideration had to be alleged and proved as to an unsealed instrument; that the statute of limitations was different as to sealed and unsealed instruments; that a release had to be under seal; that a sealed contract merged one not under seal; that a person could not bind another by seal unless authorized by seal, etc., and held that the statute enured to the benefit of corporations so far as such matters are concerned, but the excepting clause prevented its applying to corporations so far as deeds are concerned. The considerations which induced that court to reach that conclusion as to sealed and unsealed contracts do not obtain in Missouri, as under section 2389, R. S. 1889, all instruments in writing, signed by a party or his agent, promising to pay to another

Pullis v. Pullis.

person or to bearer a sum of money therein mentioned import a consideration; and section 6774, R. S. 1889, applies the ten year limitation to any writing, "whether sealed or unsealed;" releases of mortgages or deeds of trust are made by acknowledging satisfaction on the margin of the record, and no seal is necessary (section 4358, R. S. 1899), and the recorder cancels the notes.

But aside from this the Tennessee statute is: "The use of private seals in *written contracts,* except the seals of corporations, is abolished, and the addition of a private seal to an instrument of writing hereafter made shall not affect its character in any respect whatever." It will be observed that seals are abolished in "written instruments," which is not as broad as our statute which abolishes seals "in written contracts, conveyances of real estate, and all other instruments of writing, heretofore required by law to be sealed." It would appear therefore that there was more room under the Tennessee statute for holding that seals had only been abolished on written *contracts* and not on *deeds* of real estate, when made by individuals, than there is to hold that the statute abolished corporate seals on all written contracts except deeds of real estate. True, deeds are in one sense contracts, but they are usually placed in separate classes by law writers and the bar and the bench. But however that may be, we are not advised whether Tennessee has a statute like our Act of 1883, which requires the certificate of acknowledgment to so state if the corporation has no seal.

The provisions of our statute herein referred to are *in pari materia,* and must be construed together, and effect must be given to them all if possible. We start then, with the proposition that a corporation *has power* to adopt a seal, but is not *required* to do so. Prior to the adoption of the Act of 1883, the statutes did not prescribe the form of an acknowledgment, but simply the substance of what it should contain

(R. S. 1879, sec. 681). The Act of 1883 prescribed the form of acknowledgment for deeds and required the officer executing it to swear that the seal affixed was the seal of the corporation and was placed thereon by authority of its directors, but if the corporation had no seal, it provided that that fact should be stated in lieu of the first statement. The Act of 1893 abolishes the use of all private seals, except the seals of corporations. This act amends section 2388, which relates to scrawls on all instruments of writing, which are classified in the statutes under the title of "contracts and promises," and does not specifically refer to section 2401, which requires deeds by individuals to be sealed, or to sections 2399 and 2514, which require deeds by corporations to have the corporate seal affixed, but while this is true, all ambiguity is removed by the terms of the Act of 1893, for it abolishes private seals "in written contracts, conveyances of real estate, and all other instruments of writing heretofore required by law to be sealed," and it therefore wipes out the necessity of a scrawl theretofore provided for under section 2388, and of a seal theretofore required by section 2401, and if any effect is to be given to the Act of 1883 it wipes out the necessity of a corporate seal provided for in sections 2399 and 2514 in all cases where the corporation has no seal,. and preserves the necessity for a seal in all cases where the corporation has a seal. This is the only construction that can be placed upon all the sections of the statute which will harmonize them and give effect to all of them without striking down any of them, and this construction is clearly the proper one when it is borne in mind that a corporation is *authorized* but not *required* to have a common seal.

The conclusion necessarily follows that as this corporation had no seal, none was required to be affixed, and this deed of trust is valid without a seal, and the title conveyed to Mrs. Harriett Pullis thereunder is a good title.

But there is another view which is fatal to the plaintiff's right of recovery. If the deed of trust was insufficient in law to carry the title because it was not under seal, it was good in equity, and the *cestui que trust,* being in possession, can not be disturbed by these plaintiffs whose right in equity is subordinate to hers. [McClurg v. Phillips, 57 Mo. 214; Dunn v. Raley, 58 Mo. 134; Jones v. Brewington, 58 Mo. 210; Harrington v. Fortner, 58 Mo. 468; Martin v. Nixon, 92 Mo. 26.]

2. The plaintiff contends that the sheriff's deed conveyed no title because the judgment of the justice of the peace upon which the execution was issued, was entirely vacated by the defendant's appeal to the circuit court, and that it was not revived when the circuit court dismissed the appeal for failure to give an additional bond, and that the circuit court had no power to dismiss the appeal, but should have affirmed the judgment.

In view of this contention it is hard to understand the averment of the petition which offers to allow the defendants the amount they paid for the land at the sheriff's sale. For, if the judgments were wiped out by the appeal, then the executions were illegal and no title passed at the sale and the purchaser at the sheriff's sale got nothing, for the sheriff was not authorized to sell anything under such circumstances.

The argument employed to support this contention is that under section 6339, R. S. 1889, a case appealed from a justice of the peace must be tried *de novo* in the circuit court and therefore the judgment of the justice is absolutely vacated by the appeal.

In Turner v. Northcut, 9 Mo. l. c. 253, it was held that such was the effect of the appeal, and it was said: "When an appeal is taken by *either* party, its effect is not only to suspend, but to destroy the effect of a judgment of a justice; it makes it as though no judgment had been rendered. The

cause is considered as still pending, no regard is had to the judgment of a justice, and the rights of the parties are the same as they would be in any other suit pending in the courts of record." One of such rights, under section 2084, R. S. 1889, is the right of a plaintiff to take a nonsuit at any time before the case is finally submitted to the jury or court, and so it was held in Lee v. Kaiser, 80 Mo. 431, that the plaintiff could dismiss his case in the circuit court, notwithstanding there was a motion to affirm for failure to give notice, and that the judgment for defendant before the justice thus appealed from was vacated and could not afterwards be pleaded in bar to a second suit on the same cause of action. Turner v. Northcut, *supra,* was followed in Town of Carrollton v. Rhomberg, 78 Mo. 1. c. 549. This was held to be the privilege of the plaintiff in such cases, even if the defendant had filed and obtained judgment before the justice on a set-off or counterclaim, upon the theory that the dismissal of the plaintiff's case carried the set-off or counterclaim with it, as fully as if the case had been originally instituted in the circuit court where such was the practice. [Martin v. McLean, 49 Mo. 361; Nordmanser v. Hitchcock, 40 Mo. 179; Fink v. Bruihl, 47 Mo. 173.]

But to remedy this defect in the law a new section (8172) was added to the revised statutes of 1889, which provides that the dismissal or nonsuit of the plaintiff's case shall not carry with it the set-off or counterclaim of the defendant but the same shall be proceeded with as if it was a suit instituted by the defendant. So that the cases hereinbefore referred to are no longer the law in cases where the defendant filed a set-off or counterclaim before the justice and an appeal is taken from the judgment of the justice of the peace to the circuit court.

When the case of Turner v. Northcut was decided the statute provided that the appellant should give notice of

Pullis v. Pullis.

appeal (if not taken on the day of judgment) ten days before the first day of the term at which the cause is to be determined, and if he failed to do so the cause should be continued on the application of the appellee until the succeeding term, "but no appeal shall be dismissed for want of such notice." [R. S. 1835, secs. 14 and 15, p. 371, which corresponds with sections 6342 and 6343, R. S. 1889.] But there was no provision in the statute at that time like section 6344, R. S. 1889, which provides that if such notice is not given before the second term after the appeal is taken, "the judgment shall be affirmed, or the appeal dismissed, at the option of the appellee." So when Turner v. Northcut, *supra*, was decided, the possibility of the judgment of the justice being affirmed or the appeal being dismissed and thereby the judgment of the justice being again in force was not in the law or before the court. This provision first appeared in the Revised Statutes of 1879, as section 3057, which was also before the first case of Lee v. Kaiser, referred to in 80 Mo. l. c. 435, was decided, that case having been decided in 1877. Those cases must therefore be read in the light of this subsequent legislation, which has taken away much of the foundation upon which they rested.

Still, those cases overlooked another provision of the law which has been upon our statute books ever since 1835, which is that no appeal from a justice shall be dismissed for want of an affidavit or recognizance, or because either is defective or insufficient, if the appellant, before the motion to dismiss is determined, shall file a proper affidavit or "enter into such recognizance as he ought to have entered into before the allowance of the appeal." [R. S. 1889, sec. 6340; R. S. 1879, sec. 3053; R. S. 1835, sec. 12, p. 370.]

Here is a distinct provision of the law which authorizes an appeal to be dismissed on motion of the appellee unless the appellant takes the steps thereby permitted. If such appeal

is so dismissed, the judgment of the justice must thereby be revivified. There is no authority of law for the circuit court to affirm the justice's judgment under these circumstances. No option to affirm or dismiss is given the appellee by this section, as is given by section 6344, in cases where a notice of appeal is not given before the second term. If the appeal vacates the judgment absolutely, how could it be affirmed or be left in force by the dismissal of the appeal as authorized by these two sections, 6340 and 6344, R. S. 1889? It is plain therefore, that these sections must be construed to mean that while a case appealed from a justice of the peace must be tried *de novo* in the circuit court, and while every plaintiff may dismiss his suit at any time before it is finally submitted to the jury or court, still he can not carry with his dismissal the defendant's set-off or counterclaim either in the justice's court or in the circuit court, and if the judgment was for the defendant on his set-off or counterclaim before the justice and the plaintiff appeals he does not thereby vacate that judgment, nor can he evade the effects of it by failing to give a proper appeal bond or to give the requisite notice of the appeal. The case as to the defendant is more striking, for if a defendant by appealing from a judgment of the justice vacates the judgment, and by refusing to give a sufficient bond in the circuit court could have his appeal dismissed, he could thereby escape the effects and consequences of the judgment entirely. And that would be the effect in this case if we adopted such a view. True, that construction would suit these plaintiffs, but how would it be regarded by the plaintiff in that or any similar case, who would in this manner be deprived of the fruits of their case by something over which they had no control? Such a construction would be highly advantageous to all defendants, but very destructive of the rights of plaintiffs. And the same is true as to defendants who have obtained judgment on their counterclaims

against the plaintiffs.   It was to remedy just such manifest incongruities that these statutory provisions were enacted. The St. Louis Court of Appeals overlooked this section 6340, when it said in Williams v. Lewis, 47 Mo. App. 659, that an appeal could only be dismissed for failure to give the notice required by section 6344.

It follows, therefore, that when the Pullis Brothers Iron Company did not give a proper and sufficient recognizance before the motion of the Tennessee Coal, Iron and Railroad Company was determined, the circuit court entered the only judgment it had the power to enter, that of the dismissal of the appeal, and that this left the judgments of the justice of the peace in full force.

Those judgments were rendered on March 20, 1896, appeals were taken by the defendants on the same day, and transcripts thereof were filed on March 23, 1896, by the plaintiffs in the circuit clerk's office, as is permitted by sections 6286 and 6287, for the purpose of having such judgments become liens on real estate.   It is a total misapprehension of those sections to suppose that they authorize any such proceeding or can have any such effect in cases where an appeal is pending from the judgment of the justice of the peace.   Those sections are intended to apply only to final judgments of a justice of the peace from which no appeal has been taken.   The filing of such transcripts as was done in this case was wholly unwarranted and the circuit clerk should never have received them.   They created no lien and gave no right to the plaintiff at that time.   The effect of such filing must be treated the same as if such transcripts had been filed on the twenty-fourth of February, 1897, the day when the appeals were dismissed in the circuit court.   Thereafter the justice properly issued executions on those judgments, for no one else could do so until he had done so, and there was a *nulla bona* return by the constable, and a transcript thereof

was filed in the circuit clerk's office, an execution issued thereon by that clerk, a levy and sale thereunder by the sheriff and a purchase by the defendants. This conveyed whatever title the Pullis Brothers Iron Company had to the premises on February 24, 1897.

The question of whether the execution was issued to the constable of a township other than that in which the defendant resided, is not open to inquiry collaterally, as is sought to be done in this case. [Waddell v. Williams, 50 Mo. l. c. 221, par. 2.]

### III.

It is alleged in the petition that the plaintiff, the Riverside Iron Works Co., obtained judgment in the circuit court against the Pullis Brothers Iron Co. for $1,039.51, on the fourteenth of May, 1896, and had an execution issued thereon, which was returned *nulla bona*. It is not averred or pretended that such execution was levied on this property or that it was sold under that execution. In the view we have taken of the judgments of the Tennessee Coal, Iron and Railroad Co., they did not become liens on real estate until February 24, 1897, which would make them subordinate to the lien of the Riverside Iron Works Co., rendered May 14, 1896. But it does not appear that the plaintiff company enforced its lien within three years or had it revived, while the Tennessee company did so at once. The latter has therefore acquired a right superior to the plaintiff company. [R. S. 1889, secs. 6012, *et seq.*; Bradley v. Heffernan, 156 Mo. 649.]

### IV.

There is no merit in the contention that the trustee and sheriff both sold the land in bulk.

No one asked that it be sold separately except Thomas R. Pullis, and he was not entitled to any consideration because he had purchased it in bulk when it was first offered for sale

under the deed of trust, and then refused to pay the purchase price, or take the deed, and he was therefore ineligible as a bidder. But even he did not pretend that he wanted to buy any part of it.

However, the petition charges that it is all one plant and among the grievances pleaded is that its unity is about to be disturbed, and therefore these plaintiffs can not be heard to say it should be treated in any other way than as a whole.

The fact is, moreover, it has always been treated as a single plant. The buildings have obliterated the platted lot lines, and the owner has treated them as one lot. The law also so regards it. [Progress Press Brick Co. v. Gratiot Brick & Quarry Co., 151 Mo. 501.]

This disposes of all the points raised by counsel or stated in the pleadings or proofs upon which the circuit court acted, and the conclusion is irresistible that instead of there being a strong probability of the plaintiffs ultimately succeeding in this case, no judgment for the plaintiffs could ever be rendered or if rendered could be allowed to stand. For these reasons the order of the circuit court refusing to revoke the order appointing a receiver is reversed and the cause remanded to that court with directions to set aside the appointment of the receiver and to restore the property to the defendants who were in possession at the time the receiver was appointed. All concur.